HELVERING, Commissioner of Internal Revenue, v. CONTINENTAL OIL CO.

No. 5863.

Court of Appeals of the District of Columbia.
Argued Oct. 11, 1933.
Decided Nov. 27, 1933.

Rehearing Denied Jan. 22, 1934.

G. A. Youngquist, Sewall Key, John H. McEvers, and C. M. Charest, all of Washington, D. C., for petitioner.

Arthur B. Hyman, of New York City, for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a tax case in which the Commissioner is the petitioner. The respondent is the Continental Oil Company, and the proceeding involves its tax liability as transferee of the assets of Mutual Oil Company of Maine, Mutual Oil Company of Arizona, Mutual Refining & Producing Company, and Northwestern Oil Refining Company.

During the period January 1, 1920, to March 15, 1920, Mutual Oil Company of Maine owned all the capital stock of the three last above-mentioned companies. On March 15, 1920, Continental Company (respondent) acquired the entire capital of Maine, and the following March 15 (1921) Continental filed a consolidated return for itself and the other four companies for the

entire calendar year 1920. Some time after the acquisition by Continental of the stock of Maine, the former caused all of the assets of Mutual Oil Company of Arizona, Mutual Refining & Producing Company, and Northwestern Oil Refining Company to be transferred to it, and dissolved these corporations. The value of the property so transferred by each company was sufficient over and above its liabilities to cover income and profits taxes due at the time of the transfer. The assets of Maine were transferred to Continental March 15, 1920, but it owed no tax, and therefore the transfer is of no consequence in this proceeding. The Commissioner rejected the consolidated return filed by Continental for itself and the other four companies for the calendar year 1920. The ground of rejection was that, since Continental did not acquire the entire capital stock of Maine until March 15, 1920, the latter company, or the Continental Company for it, should have filed a consolidated return for the period January 1, 1920, to March 15, 1920. He said that two consolidated returns (to cover the calendar year) should have been filed instead of one—the first for the period January to March; the other for the period March to December 31. He determined the consolidated invested capital and the income for each company for each of the two periods, and mailed Continental a notice of a proposed assessment against it in the sum of $56,113.14 for the period January 1, 1920, to March 15, 1920, as its liability as transferee of the assets of the four companies mentioned. Inclosed with the notice was a statement in which, under the title "Tax Liability," the transferor was shown to be Mutual Oil Company of Maine; the year, 1920; and the deficiency, $56,113.14—and the transferee, Continental Oil Company; the year, 1920; and the deficiency, $56,113.14.

The Board of Tax Appeals held that this deficiency notice covered only the liability of Continental for the tax, if any, owing by Maine, and, since that company owed no tax, there was no transferee liability, and it accordingly determined no deficiency. We are asked to review and reverse this decision of the Board.

■■■ Section 274 (a) of the Revenue Act of 1926 (44 Stat. 55, tit. 26 USCA § 1048) makes it the duty of the Commissioner to send a notice of deficiency to a taxpayer by registered mail. The statute in this respect is sufficiently complied with if the form adopted by the Commissioner shall notify the taxpayer of the proposed deficiency. The statute apparently contemplates nothing more than that the notice, where a deficiency in respect of tax is determined, shall be sent to the taxpayer of "such deficiency." In the case we are considering the Board was of opinion that the heading or summary of the statement, which we have set out in full above, was a notice to the effect that the deficiency in tax claimed was owing from Continental as transferee of Maine, and, as Maine owed no tax, no deficiency could be found. In reaching this conclusion, the Board regarded the Commissioner's deficiency letter as an assertion of liability only against Maine as the holder of the shares of stock of its controlled companies and against Continental as transferee of the assets of Maine. But the quoted part of the Commissioner's notice, which apparently was the basis of the Board's conclusion, was a mere summary or caption, and was followed by the further statement: "The records of this office indicate that the Mutual Oil Company of Maine transferred its assets, which consisted of the capital stock of the Mutual Oil Company of Arizona, the Mutual Refining and Producing Company, and the Northwestern Oil Refining Company as of March 15, 1920, and was dissolved January 12, 1921. The Mutual Oil Company of Arizona transferred its assets to you on December 31, 1921, and was dissolved January 23, 1922. The Mutual Refining and Producing Company and the Northwestern Oil Refining Company transferred their assets on April 30, 1921, to the Mutual Oil Company of Arizona and were dissolved on July 12, 1921, and August 7, 1922, respectively." This in turn was followed by detailed statements of liability as to each of the companies named.

We have examined the deficiency letter filed by the Commissioner, together with an attached summary and schedules, and we have likewise examined the findings of fact. The deficiency letter notified Continental that the Commissioner proposed to assess liability for taxes against it not only as transferee of Maine but likewise as transferee of Mutual Oil Company of Arizona, Mutual Refining & Producing Company, and Northwestern Oil Refining Company, in respect to alleged deficiency in income and excess profits taxes for the period January 1, 1920, to March 15, 1920. Except for the caption to which we have referred, the notice is plain and unambiguous as to the purpose of the Commissioner and the grounds on which he relied to sustain it. Continental refused to consent to the proposed assessment, appealed to the Board, and in its petition stated the

controversy to be its liability for taxes as transferee of all of the companies just above named, and in the findings of fact, which was by stipulation, the Board found that "the deficiency letters propose to assess the liability * * * of the petitioner as transferee of the assets of" the four companies named, for the period January 1, 1920, to March 15, 1920. The findings also fixed the amount of the tax covering the period January 1, to March 15, 1920, as $56,113.14 and as due from the four companies, viz., Mutual Oil Company of Maine, Mutual Oil Company of Arizona, Mutual Refining & Producing Company, and Northwestern Oil Refining Company. In reaching a decision, as appears from the record, the Board misconstrued the purport of the notice as well as the agreed statement of facts, and based its decision on what to us appears to have been an erroneous theory of the question submitted.

As we have seen, there was inclosed with the Commissioner's notice to the Continental Company (the notice of March 15, 1927) a statement with a heading in which the caption showed the claimed deficiency of tax to be primarily due by Maine and by the Continental as transferee of that company. This, as the Board correctly states, was not true, for there was no tax liability or deficiency of any kind due by Maine for the period in question, and the Commissioner never claimed there was, for in the agreed statement of facts he admits that: "The net loss of the Mutual Oil Company of Maine, which owned only the stocks of the Mutual Oil Company of Arizona, Northwestern Oil Refining Company, and Mutual Refining and Producing Company for the period from January 1, to March 15, 1920, was the sum of $8,255.02." It is perfectly obvious, therefore, in view of this stipulation, the Commissioner never had any purpose to assert a liability against Maine either on its own account or for account of the other companies whose stocks it owned. If, however, the deficiency letter of the Commissioner had confined itself to the erroneous caption, it obviously would have been no notice at all, or at best an ineffective one, but, as has been said, the accompanying papers and schedules, part and parcel of it, contained precise and definite information as to the true and correct basis of the Commissioner's claim, and Continental could not by any possibility have been misled by the caption or heading, and there can be no better evidence of this than the fact that its own petition to the Board and the agreed facts show beyond the slightest question that all parties understood the Commissioner was asserting a liability for taxation for the period in question against Continental as transferee of all the oil companies involved.

In this view we find nothing to sustain the statement by the Board that the Commissioner, because of the heading we have referred to, had elected to regard the Maine Company as parent of the other three companies and as such solely responsible for the tax. The entire record, as we read it, negatives this theory. The form of the letter was in the circumstances sufficient for notice, and the position of the parties in the hearing was clearly stated and understood. For the error of the Board in treating the Commissioner's deficiency letter as insufficient, the case will have to be remanded for further consideration and decision, since the real issue has never been decided by it.

■ But it is insisted by the Continental Company that we are without any jurisdiction to pass on the petition for review because of the failure of the government to apply for it within the six-month period allowed by the statute. Section 1001, Revenue Act 1926, c. 27, 44 Stat. 109, tit. 26 USCA § 1224 and note. The Board's decision was entered May 20, 1931. The petition for review was not filed in this court until July 22, 1932. There was therefore a spread of fourteen months between the decision and the petition; but on November 16, 1931, within the six-month period allowed by the act for review, the Commissioner applied to the Board for a rehearing, and this petition the Board had under consideration until April 18, 1932, and then denied.

Continental now takes the position that the decision of the Board became final on November 20, 1931, and that the time for filing the petition was not tolled by the filing of a petition for rehearing on November 16 and within the six-month period. On this point the question for decision is whether the filing of a petition for rehearing suspends the running of the time for filing the petition for review, and this involves the question whether or not the Board of Tax Appeals has the right and power, after the entry of its order, upon petition seasonably filed, to grant a rehearing. The same question has been decided affirmatively by two courts of appeals. Griffiths v. Commissioner, 50 F.(2d) 782 (C. C. A. 7); and Burnet v. Coal Co., 62 F.(2d) 906 (C. C. A. 4). But Continental insists that both these cases were decided incorrectly. It says the Board possesses practically none of the characteristics of a court, that

it has no power to enforce its judgments, or to compel obedience to its mandates, and that therefore the rule of universal application in a court of law or a court of equity that a petition for a rehearing suspends the running of the time for taking a writ of error or appeal has no application.

█ The character, as well as the functions, of the Board of Tax Appeals, is dealt with at great length by the Supreme Court in Old Colony Trust v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918, and no good purpose will be served in extending that discussion. It is enough that, on appeal to the Board from the Commissioner's determination of deficiency, the Board exercises powers essentially judicial in their character. In these circumstances, it would be going very far to say that, having reached a decision and having entered an order of redetermination, it was without power on any account to reconsider the same. But whether it inherently has this power or not is of no consequence, for we think it was given the power by the act of Congress creating it. Section 900 (h), 907, Act 1924, section 1000, Act 1926, as amended by section 601, Revenue Act 1928, tit. 26 USCA § 1219. Section 601 provides, in part, as follows: "The proceedings of the Board and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Board may prescribe and in accordance with the rules of evidence applicable in courts of equity of the District of Columbia."

Under the right to adopt rules of practice and procedure, there can be no doubt there is included the right to provide for the filing of a petition for rehearing, for the term "practice" embraces the manner in which a case shall be conducted and tried from its inception to conclusion, and, as used in statutes in relation to courts, covers the mode and manner of trial and the review of judgments, or, as stated by Bouvier, "the form, manner, and order of conducting and carrying on suits and prosecutions in the courts, through their various stages, according to the principles of law and the rules laid down by the respective courts." As used by Congress, it means, we think, unquestionably the adoption of such rules as would facilitate the transaction of business in a proper and orderly manner. As to this, see House Conference Report No. 356, Sixty-Ninth Congress, first session, page 53, on conference relating to the Revenue Act of 1926, as follows: "The House bill denied the taxpayer a rehearing before the Board. The amendment [Senate] strikes out this provision in order to permit the rules of the Board to govern the granting of a rehearing."

█ But, in addition to claiming the Board had no right to adopt such a rule, it was said at the bar that no rules have been adopted. However, it clearly appears that the Board have regularly exercised the right to grant rehearings, and in a recent case in which the power was challenged (Garden City Co. v. Commissioner, 27 B. T. A. 1132) the Board reviews its consistent procedure in such matters, saying, in effect, that the power had been hitherto exercised in its discretion by universal consent. This practice was in itself a general rule, and, while we are in accord with a suggestion made in the opinion in Burnet v. Coal Co., supra, that it is desirable more formal rules fixing the time and conditions under which applications for rehearing may be made should be adopted and announced, we do not think failure to do this, in the circumstances shown here, is fatal to the exercise of the right.

In these circumstances, we think the motion to dismiss for lack of jurisdiction should be denied, and, for reasons stated in the forepart of this opinion, the case must be remanded to the Board, with instructions to proceed in accordance with the views we have expressed.

Reversed and remanded.

Mr. Associate Justice VAN ORSDEL dissents.