**SUCCESSORS OF JOSE GONZALEZ & CO., S. EN C., v. BUSCAGLIA, Treasurer of Puerto Rico.**

No. 4041.

Circuit Court of Appeals, First Circuit.

March 29, 1946.

L. E. Dubon, of San Juan, Puerto Rico (Diego Guerrero-Noble, Dubon & Ocho-

teco, Otero-Suro & Otero-Suro, Felix Och-oteco, Jr., Jose Otero Suro, and Rodrigo Otero Suro, all of San Juan, Puerto Rico, of counsel), for appellant.

I. Henry Kutz, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., and Fowler Harper and Warner Gardner, Sols., Department of the Interior, and Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, Department of the Interior, all of Washington, D. C., of counsel), for appellee.

Before MAHONEY, and WOODBURY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an appeal from the Supreme Court of Puerto Rico which affirmed the judgment of the District Court of San Juan dismissing the taxpayer's action for a refund of income taxes.

After the taxpayer filed its income tax returns for the years 1925, 1926, 1927 and 1928, the Department of Finance assessed a deficiency for each of those years. The taxpayer appealed to the Board of Review and Equalization,[1] hereinafter referred to as the Board, which redetermined the assessment for each of the four years. The dates of the decisions of the Board and notices to the taxpayer of the assessment of taxes in accordance with the Board's determination for each of the years in question was as follows:

| Year | Date of Board's Decision | Date of Notice |
|---|---|---|
| 1925 | June 25, 1928 | Oct. 16, 1928 |
| 1926 | Dec. 23, 1930 | March 2, 1931 |
| 1927 | Dec. 23, 1930 | March 2, 1931 |
| 1928 | July 9, 1931 | Oct. 16, 1931 |

The total tax fixed by the Board for the four years was $41,778.22 without sur-charges or interest. On July 9, 1937, the taxpayer asked the Treasurer to reopen the case because of alleged errors in the determination of the Board unknown to the taxpayer at the time of its appeal to the Board. The Treasurer denied this request on the ground that the decision of the Board was final and could not be altered. The taxpayer again appealed to the Board which, *sua sponte,* reconsidered its earlier decision. The Board struck out entirely the tax for 1925, holding that the period of limitations on the collection of the tax for that year had run, and decreased the tax for each of the other three years because it had not given sufficient allowance for depreciation. This decision was rendered on April 23, 1940 and reduced the taxes fixed by the first decision by $30,028.06. The Treasurer insisted that the Board had no jurisdiction to reconsider its earlier decision, and succeeded in collecting $96,512.77 which included the tax as originally determined by the Board for each of the four years plus interest and surcharges thereon, by threatening to institute distraint proceedings. The taxpayer paid this amount under protest.

The complaint contains two causes of action: (1) For the recovery of so much of the taxes paid as the Board in its second decision determined was no longer collectible, or erroneously assessed, i.e., $30,028.06; and (2) for recovery of the total taxes paid for the four years, i.e., $96,512.77. We shall consider each cause separately.

As to the first cause of action, the taxpayer alleges that the Board had full power to reconsider its earlier decision and to redetermine the taxes for each of the four years in issue.

The Board was established by § 308 of the Political Code of Puerto Rico.[2] Its functions are more specifically described in § 310 of the Political Code.[3] The taxpay-

[1] This Board has been abolished and replaced by the Tax Court of Puerto Rico. Act 172, May 13, 1941; Act 169, May 15, 1943.

[2] Political Code of Puerto Rico (March 1, 1902) Section 308 (as amended by Laws of 1923, Act No. 75; and Laws of 1928, Act No. 46)—For the purpose of revising the assessment and reassessment of real and personal property as provided by this Title, and for the purpose of passing on all claims made by taxpayers in respect to the assessment of their properties and the levying of property and income taxes, there shall be in the Department of Finance a permanent Board of Review and Equalization with an open office, to be composed of the Treasurer of Porto Rico and four persons versed in matters pertaining to the levying of taxes in Porto Rico, two of whom shall be agriculturists. * * *

[3] Section 310 (as amended by Laws of 1923, Act No. 75)—Said Board of Review and Equalization shall meet in regular session in the months of January, May and September of each year, and in special session at such other times as may be

er urges that the functions of this Board were the same as those of The Tax Court of the United States and that The Tax Court of the United States and other judicial and administrative bodies, empowered to hear tax cases, have implied power to grant rehearings even after final determinations. Helvering v. Continental Oil Co., 1933, 63 App.D.C. 5, 68 F.2d 750, 753 certiorari denied 292 U.S. 627, 54 S.Ct. 629, 78 L.Ed. 1481.

 The analogy fails since the first part of the comparison is not true. The functions of the Board at the time in question were vastly different from those of The Tax Court of the United States and from those of the Tax Court of Puerto Rico which replaced the Board. This is made eminently clear by a recent decision of the Supreme Court of Puerto Rico, Mayaguez Sugar Co. v. Court of Tax Appeals, 60 P.R.R. 733 (Sp.Ed.) decided July 23, 1942. In that case the court said that the Board was merely a part of the Treasury and its purpose was only to serve as a check on the Treasurer within the Department. "Its decisions were in no sense a judicial review of the Treasurer's decision." The taxpayer could obtain a judicial review in the district court which would hear the issues on a trial de novo. "The role of the Board, however, was narrow and restricted. Its acts were purely executive." The taxpayer urges, however, that § 310 expressly grants to the Board the power to entertain rehearings *sua sponte*. It stresses the following portion of the statute: "Said Board shall have power to strike out, lessen or increase the valuations made in any schedule returned to it, whether or not complaint has been made in connection therewith, and to de-

cide all other complaints in regard to the levying of property and income taxes and to correct all errors as such errors are brought to its attention."

We believe that the Supreme Court of Puerto Rico was correct in deciding that this portion of the section has reference not to rehearings and reconsiderations but rather to original appeals from determinations of the Department of Finance. In addition, the Legislature expressly provided in said section for one method of reconsideration when it said:

"For just cause the Board may also reconsider, at its discretion and in its judgment any decision made by it when so requested by a taxpayer within the unextendable term of thirty days counting from the date of service of notice."

We cannot imply an intention by the Legislature to provide for reconsideration by the Board, *sua sponte* after thirty days, when it has expressly provided for a method of reconsideration on motion of the taxpayer within a period not to exceed thirty days.

Moreover, the fact that the taxpayer could get a complete trial de novo in the district court indicates that there was no compelling necessity for broadening the power of the Board to reconsider its own decisions. At any rate, this is a question of local law and we cannot reverse the decision of the Supreme Court unless it is manifestly in error. DeCastro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384. We do not believe that such is the case.

 The second cause of action is premised on the period of limitation contained in § 61(c) of the Income Tax Act

necessary in the opinion of the chairman. At said meetings the board shall hear appeals received and shall decide questions arising before the board relative to the greater or lesser amount at which property may be assessed for purposes of taxation, or to the amount of taxes, or to exemptions from taxation, or to fix the income tax of any taxpayer; and upon recording such determination, the board shall correct returns, and liquidate taxes to be levied on income returns filed in accordance with the decision, and shall report the facts to the Department of Finance for such corrections, cancellations or issuance of receipts as may be proper. Said board shall have power to strike out, lessen or increase the valuations made in any schedule returned to it, whether or

not complaint has been made in connection therewith, and to decide all other complaints in regard to the levying of property and income taxes, and to correct all errors as such errors are brought to its attention. For just cause the board may also reconsider, at its discretion and in its judgment, any decision made by it when so requested by a taxpayer within the unextendable term of thirty days counting from the date of service of notice. In performing the duties imposed on it by this Title, said board may examine, under oath or affirmation, any person who may have knowledge or information concerning the value of property subject to taxation, and any member of the board may administer the oath or affirmation.

of Puerto Rico.[4] It is clear that under this statute, were there nothing to toll the running of the statute or bar the taxpayer from setting it up, the period for court action by the Treasurer would have expired on October 16, 1934 for the 1925 taxes; March 2, 1937 for the 1926 and 1927 taxes; and October 16, 1937 for the 1928 taxes. But the Supreme Court found that the "appellant's own acts in requesting extensions and making promises to pay which never materialized, causing the Treasurer who relied on said promises to allow the term fixed by law for making the collection to expire, prevent appellant from benefiting itself from the consequences of the situation which it itself brought into being."

Between the years 1931 and 1941 the Treasurer had taken steps to collect the deficiencies by attaching certain property of the taxpayer and publishing notices of sale of the property but never effectuated a sale. The taxpayer sets forth these facts as proof of the non-reliance of the Treasurer upon its promises to pay the tax. The evidence, however, shows that there was correspondence from the taxpayer to the Treasurer expressly requesting the suspension of the auctions advertised and attachments levied. There is also ample evidence in the record to support the court's findings as to acts and promises of the taxpayer which induced the Treasurer to suspend his efforts to collect the taxes through the courts. At personal conferences held between the taxpayer's representatives and the treasurer, the former promised to pay the taxes. Thus the only question before this court is whether the conduct of the taxpayer constitutes an estoppel which can be invoked by the Treasurer to bar the taxpayer from setting up the statute. This also is a question of local law on which the determination of the Supreme Court of Puerto Rico must stand unless inescapably wrong. We do not believe that the Supreme Court in applying the doctrine of estoppel was inescapably wrong. In Stone v. White, 1937, 301 U.S. 532, 535, 57 S.Ct. 851, 853, 81 L.Ed. 1265, the United States Supreme Court said that suits for recovery of taxes are "predicated upon * * * equitable principles" and that "the plaintiff must recover by virtue of a right measured by equitable standards." And in Stearns Co. v. United States, 1934, 291 U.S. 54, 61, 54 S.Ct. 325, 328, 78 L.Ed. 647 it said:

"The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him, in effect, "this is your own act, and therefore you are not damnified"' (citations). Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong (citation). A suit may not be built on an omission induced by him who sues (citations)."

The judgment of the Supreme Court of Puerto Rico is affirmed.

---

[4] Laws of Puerto Rico (1925): Act No. 74 (known as Income Tax Act): "Section 61. * * *

"(c) Where the assessment of the tax is made within the period prescribed in section 60 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

"Section 60. (a) * * *

"(1) The amount of income and excess-profits and the amount of income taxes imposed by this Act or by Income Tax Act No. 59, of 1917, Income Tax Act No. 80 of 1919, Income Tax Act No. 43 of 1921, or by any of said Acts, as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.

"(2) * * *

"(b) The period within which an assessment is required to be made by subdivision (a) of this section in respect of any deficiency shall be extended (1) by 30 days if a notice of such deficiency has been mailed to the taxpayer under subdivision (a) of section 57 and no appeal has been filed with the Board of Review and Equalization, or (2) if an appeal has been filed, then by the number of days between the date of the mailing of such notice and the date of the final decision by the Board."