**UNITED STATES of America,**
**Plaintiff,**

v.

**Charles H. LEHIGH, Defendant.**
**No. 888.**

United States District Court
W. D. Arkansas,
El Dorado Division.
Dec. 28, 1961.

Stanley F. Krysa, Trial Atty. Tax Division, Dept. of Justice, Washington, D. C., for plaintiff.

Leon B. Catlett, Little Rock, Ark., for defendant.

HENLEY, District Judge.

This suit to collect an income tax deficiency, brought by the Government against the defendant, Charles H. Lehigh, as authorized by 26 U.S.C.A. (1954) § 6502, and by 28 U.S.C.A. §§ 1340 and 1345, has been tried to the Court and submitted on the pleadings, a stipulation of facts, oral testimony, documentary evidence, and written briefs. This memorandum incorporates the Court's findings of fact and conclusions of law.

The litigation stems from the fact that in the course of an unusually fortunate day at the horse races in Caracas, Venezuela, defendant won the net sum of $293,813. At that time defendant was employed in Venezuela where he had been since January 1952. Relying on section 116(a) of the 1939 Internal Revenue Code, 26 U.S.C.A. (1939) § 116(a), defendant took the position that his winnings were not subject to the United States income tax, and when he filed his 1953 return in 1954, he did not show his winnings as taxable income, although by means of an attachment to the return he advised the Government of his good fortune.[1]

In late March 1953 the Internal Revenue Service, in response to an inquiry made by defendant's father, advised the latter that his son's winnings were taxable income.[2] In 1955 an audit of defendant's 1953 return was made, and on August 15, 1955, the Commissioner made a jeopardy assessment of income tax deficiency, penalty, and interest totaling $304,225.76.[3] 26 U.S.C.A. (1954) § 6861, 26 U.S.C.A. (1939) § 273. On August 16, 1955, there was mailed to defendant by ordinary mail addressed to 1415 West Main St., El Dorado, Arkansas, the address shown on the return, a "Statement of Income Tax Due," IRS Form 17.

Shortly after the original jeopardy assessment was made it was discovered that defendant was entitled to an abatement of $87 thereof, which was allowed him. On September 14, 1955, there was mailed by registered mail a formal notice of deficiency, IRS Form 1231, Rev., addressed to defendant at "Apartado 53, Correoseste, Distrito Federal, Venezuela."[4] That address was wrong since defendant's actual mailing address in Caracas was Apartado *5375*, Correos Este, Distrito Federal, Venezuela. This second notice was never delivered to defendant but was returned to the Internal Revenue Service with an endorsement on the envelope to the effect that it had been addressed to the wrong box.[5]

1. The attachment to the return reflects gross winnings of $296,413 with wagering losses of $2,600, leaving the net sum of $293,813. The attachment also shows that the net winnings had earned $1,500 as interest in Venezuela. Defendant stated that his stay in South America was 516 days, and that he was returning to Venezuela to enter business. Defendant also advised the Treasury that, "Any discussion of this case may be taken up with my father, Charles Lehigh at 1415 West Main, El Dorado, Ark." The 1953 return was filed on June 15, 1954, at a time when defendant was in the United States. The address given on the return was 1415 West Main St., El Dorado, Arkansas, which was also the address of defendant's father. After the return was filed, defendant returned to Venezuela and remained there until 1958 when he returned to this country.

2. Section 116(a) of the 1939 Code provided that earned income received by a United States citizen employed abroad should not be taxable under certain conditions. However, it is conceded in this case that gambling winnings did not fall within the concept of earned income as used in the section of the Code upon which defendant relied.

3. The Internal Revenue Agent who made the audit reported that as of the time of audit defendant was living in Venezuela, was not working, and was dissipating his winnings. It was reported that the winnings were on deposit in a Caracas branch of a Swiss bank, and were probably not within the reach of United States taxing authorities. The agent came to the quite permissible conclusion that collection of the tax was in serious jeopardy and that there should be an immediate assessment.

4. "Apartado" is the Spanish equivalent of "Postoffice Box." "Correoseste," which should have been written "Correos Este," means Eastern Post Office. It appears that there are two post offices in Caracas. One is the Main Post Office and the other is the Correos Este or Eastern Post Office.

5. It thus appears that the incorrect spelling of Correos Este as one word did not confuse the Venezuelan postal authorities. The problem was in the box number. Defendant testified that there were about 3,000 letter boxes in the Eastern Post Office, and there is no reason to question his testimony in that regard.

The Government took no further action in the matter until it commenced this suit in November 1960, more than six years after the return was filed and more than five years after the jeopardy assessment was made.

The sole defense tendered by defendant is that he was not given proper notice of the assessment upon which the Government's claim is based, that the failure to give such notice was fatal to the assessment, and that it is now too late for the Government to make any other assessment against him with respect to his 1953 income tax liability.

The Government contends that either one or both of the notices mailed to defendant constituted sufficient compliance with the statutory requirements of notice. It appears to be recognized by both sides that, unless there was compliance with the notice requirements of the statute, the Government is not entitled to prevail. See in this connection Merten's Law of Federal Income Taxation, Rev. § 49.131ff and § 49.146, and authorities there cited.

■ The statutory requirements of notice with which the Court is concerned may be found in sections 6212 and 6861 of the 1954 Internal Revenue Code and in sections 272 and 273 of the 1939 Code. As applicable to this case those sections provide in substance that when a jeopardy assessment is made notice thereof is to be mailed to the taxpayer within 60 days after the making of such assessment. Section 6212(a) authorizes the Secretary of the Treasury or his delegate to mail the notice to the taxpayer by means of registered or certified mail; and section 6212(b) provides, with an exception not here pertinent, that when the notice is mailed to the taxpayer's last known address, it is sufficient even though the taxpayer be dead or under legal disability. The notice serves the dual purpose of notifying the taxpayer of the Government's claim and of defining the period within which the taxpayer may apply to the Tax Court for relief. 26 U.S.C.A. § 6213(a).

■ It is settled that where the notice is sent by registered or certified mail to the taxpayer's last known address it is not necessary that the notice actually be received by the taxpayer. Nor is it necessary that the notice be sent to what is actually the taxpayer's "correct address." It is sufficient if it is sent to his "last known address." But a letter which is simply improperly addressed has no legal efficacy as a notice. Merten's op. cit. § 49.134.

■ In many instances the "last known address" of the taxpayer is the address shown on the return so that a mailing of a deficiency notice to that address will be sufficient. However, if, after the return is filed, the Government learns that the taxpayer has moved and has acquired a new address, the notice must be sent to that address. Maxfield v. Commissioner of Internal Revenue, 9 Cir., 153 F.2d 325; Commissioner of Internal Revenue v. Rosenheim, 3 Cir., 132 F.2d 677; Welch v. Schweitzer, 9 Cir., 106 F.2d 885; see also Annotation in 24 A.L.R.2d 800, 805ff.

■ When a notice of deficiency is to be given, the Commissioner is required to exercise ordinary care to ascertain the correct address of a taxpayer and to mail the notice to that address. Arlington Corporation v. Commissioner of Internal Revenue, 5 Cir., 183 F.2d 448, and other cases there cited.

■ Where the notice is sent by ordinary mail, as contrasted to registered or certified mail, and is not actually received by the taxpayer, it is plain that the notice is insufficient even though it may have been directed to the correct last known address of the taxpayer. Where the notice is so sent, however, and is in fact received by the taxpayer in time for him to seek a review of the Commissioner's determination by the Tax Court, the validity of the notice is not clear. Older cases, arising under the Revenue Act of 1924, generally held that actual receipt of an unregistered notice was insufficient. However, in later cases, arising under later statutes, including the 1939

and 1954 Codes, it has been held that the notice is sufficient when it is actually received by the taxpayer in time for him to take his case to the Tax Court. The problem is discussed in Boren v. Riddell, 9 Cir., 241 F.2d 670; see also Tenzer v. Commissioner of Internal Revenue, 9 Cir., 285 F.2d 965, and Merten's op. cit. § 49.133. The basis of the later holdings is that the older statute, section 274(a) of the Internal Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, provided that the taxpayer "shall be notified of [a] deficiency by registered mail," whereas under section 274(a) of the Internal Revenue Act of 1926 and under the 1939 and 1954 Codes the Secretary or his delegate is simply "authorized" to use registered (or certified) mail as a means of giving notice. It was thought in Boren that the change in statutory language was not without significance, and that "the heart of the taxpayer's right is to have actual notice, which enables him to petition his Government, if he so desires." (241 F.2d 672) [6]

In many cases where the question of notice is involved the significance of that question lies in its limitation of a taxpayer's right to seek relief in the Tax Court. However, in the instant case the question of notice is of controlling importance because of the fact that if proper notice was not given, the assessment was invalid, and by virtue of section 6501(a) of the 1954 Code no new assessment could be made with respect to defendant's 1953 liability after a lapse of three years beyond the filing of the return in 1954 and after the lapse of such period no valid judicial proceeding could be instituted to collect the tax without assessment.

Taking up first the registered notice which was mailed to the wrong address in September 1955, it is the contention of the Government that although the "Apartado 53" address was in fact wrong, nevertheless it was the last address of defendant "known to the Government." As indicated, when defendant filed his return he authorized, suggested, or invited the Government to discuss his case with his father, and certain discussions in fact were held between the father and one or more agents of the Internal Revenue Service. It is claimed by the Government that in the course of a conversation between Internal Revenue Agent Wilson and Lehigh, Sr. the latter was requested by the former to supply him with defendant's Caracas address, and that Lehigh, Sr. gave him the "Apartado 53" address to which the registered notice was mailed. Based on this premise, the Government argues that it was justified in accepting the "Apartado 53" address and was, in fact, required to accept it, and that defendant in the circumstances was bound by the address furnished by his father, even if such address was incorrect. In other words the Government's contention as to the September notice is based on agency or estoppel.

In dealing with this contention the Court is willing to assume that in view of defendant's suggestion that the Internal Revenue Service discuss his tax problem with his father, he must have foreseen that an inquiry as to his Caracas address might be made of his father by a representative of the Government, and is willing to assume further that the Government had a right to accept as correct any address which Lehigh, Sr. might have supplied and to use that address in giving notice to defendant unless in the meantime it was put on notice that the address was incorrect.

The evidence is in conflict as to whether Lehigh, Sr. in fact gave Agent Wilson the "Apartado 53" address and is not satisfactory on either side. On direct examination Wilson stated positively that the address in question was supplied him by Lehigh, Sr. and that he had the address repeated to him several times so that he would make no mistake about it, that he wrote it down on a piece of paper,

---

6. In neither its trial brief nor in its post trial brief does the Government contend that it is entitled to prevail on the basis of any notice other than that purportedly given in the August and September, 1955, communications addressed to defendant.

and that he incorporated it into his audit report which was introduced in evidence. On the other hand, he stated that he got the information while in Lehigh, Sr.'s accounting office examining returns of persons other than the taxpayer here involved; and that while the address given him by Lehigh, Sr. was incorporated in the audit report, that report was not prepared in Lehigh's office but in his own office in another building. Further, he testified that he obtained the address about the middle of June 1955, whereas the audit report was not prepared until August 9, 1955.

Lehigh, Sr.'s testimony was taken by deposition in September 1961, more than six years after he gave his son's address to Wilson, and it appears that Lehigh, Sr. had with the lapse of time forgotten defendant's correct address in Caracas. Asked what the address was, he stated first that it was "Apartado 5173;" he then corrected himself and said that it was "Apartado 5175." Both of those numbers were incorrect. He was positive, however, that whatever box number he gave Wilson contained four digits. He testified that he kept his son's address and the addresses of other members of his family written on a piece of paper or some other material which was pasted on the filing cabinet back of his desk; that Wilson did not look at the paper but called over to him from the desk where he was working on other returns; that when Wilson asked for the address Lehigh, Sr. "looked up there and found the address" and called back the address to Wilson; that he spelled out the Spanish words at Wilson's request; that he did not give Wilson the "Apartado 53" address; that it was not possible for him to have given only the first two figures of the box number; that he could not have made a mistake about it; that he had to look directly at the piece of paper on which the addresses were written.

There is no question in this case that the "Apartado 53" address was completely wrong. It was not defendant's address and never had been. On the other hand, there is no evidence whatever that Lehigh, Sr. deliberately gave Wilson an incorrect address, or that Wilson intentionally recorded a wrong address and thereafter used it in his audit report knowing, as an experienced agent, that it might be used in sending out a notice of deficiency.

Obviously, either Lehigh, Sr. by mistake gave Wilson the wrong address or by mistake Wilson recorded the wrong address. Understandably, neither Wilson nor Lehigh, Sr. is willing to concede that the mistake might have been his. The Court cannot say who made it. Lehigh, Sr. may have omitted to give the last two figures of the number 5375, or Wilson may have failed to hear the last two digits, or may have failed to write them down, or when he wrote his report he may have made a mistake in transcribing the figures which he had written originally.

Clearly, on this phase of the case at least, the burden is upon the Government to show that Lehigh, Sr. gave Wilson the incorrect "Apartado 53" address, and the Court cannot so find from a preponderance of the evidence. Hence, the Government cannot successfully rely on the September notice as complying with the statute.

Moreover, even if it be assumed that Lehigh, Sr. did give Wilson the "Apartado 53" address, there is some evidence in the record which would indicate that before the September notice was mailed, the Government was on notice that the address in question was wrong. As stated, Wilson obtained the address, whatever it was, about the middle of June 1955. On July 6 Wilson wrote a letter to defendant at the "Apartado 53" address, and that letter was returned. The July letter was written more than two months prior to the mailing of the September notice and more than a month prior to the mailing of the original notice on August 16. Making due allowances for the distance between Arkansas and Venezuela and delays in transit and similar matters, it is possible that the letter was returned prior to the mailing of the September notice or even prior to

the mailing of the August notice and, if so, such return might well have put the Government on notice that the "Apartado 53" address was wrong and cast upon it the obligation of getting either a better address or going back to the address shown on the return. In that connection it is to be noted that the August notice was not mailed to Caracas but was in fact mailed to El Dorado.

On the present state of the record the Court cannot say when the July letter was returned, but the fact that the Caracas address was not used for the August notice may suggest that when the August notice was mailed the Government knew that the "Apartado 53" address was erroneous. It would have been helpful to the Court if the envelope in which the July letter was mailed had been retained and introduced in evidence. Had such been done the Court might have been able to find when the letter was returned and for what ostensible reason.

It is not contended that the August 16, 1955, notice was sent by registered or certified mail. Assuming that actual receipt by the taxpayer of an unregister-

ed or uncertified notice satisfies the requirements of the statute, questions are presented as to whether defendant actually received the August 16 notice in time to have applied for a review of the Commissioner's assessment by the Tax Court, and whether the August notice was sufficient in form and content to constitute a valid notice under the statute.

It has been observed that the August communication was a "Statement of Income Tax Due," IRS Form 17, Rev. The original of that statement was mailed to defendant, and there was introduced in evidence a carbon copy thereof, which copy reflects a pencilled change in one date, and a pencilled notation "87.88," which apparently refers to the amount of abatement later credited to defendant. While there is no direct evidence on the subject, it seems clear to the Court that the original statement did not contain the pencilled change or the pencilled notation. Since, as it happens, the form and content of the statement have bearing on both of the questions relating to the validity of the statement as a notice, the statement is reproduced as follows:

Attention is called to the fact that originally the document reproduced purported to be a statement of income tax due for the year 1954, and that the date "1954" was stricken with a pencil and the year "1953" substituted, the deletion and substitution being made after the original statement had been prepared.

The record discloses that the statement was mailed to El Dorado, and there is no reason to believe that it was not delivered there to Lehigh, Sr. Lehigh, Sr. did not deny receipt of the notice, and he said that if he did receive it he sent it on immediately to his son in Caracas. Since Lehigh, Sr. had his son's correct address,

the inference is permissible that the notice was received by the son in due course and in time for him to have applied to the Tax Court for a review of the assessment. On the record before it, the Court finds that the August notice was received by the elder Lehigh in El Dorado, that it was sent on to defendant at his correct address in Caracas, and that defendant received it well within the 150 day period allowed him by section 6213(a) for application to the Tax Court.

In making this finding the Court is not unmindful of the testimony of defendant himself. On direct examination defendant was questioned about the August 1955 notice. The question put to him was: "Mr. Lehigh, did you receive a notice dated August 15, 1955 of jeopardy assessment of income tax and penalties for the year 1953?" The answer was: "I did not." The cross examination on this point was as follows:

"Q. We have agreed in this case that a notice and demand was sent on August 16, 1955—you know what a notice and demand is, don't you?

"A. Yes, I found that out—

"Q. You have testified that you never received that; is that correct?

"A. That is correct.

"Q. It was mailed to your El Dorado address?

"A. That is what it was stated in the stipulation—I don't believe it was.

"The Court: Well, if that is what the stipulation shows that is what the fact is.

"Q. Now, again you were present at your father's deposition, do you recall him testifying that if he had received it he mailed that document also to you shortly after receiving it?

"A. Yes.

"Q. And your testimony again is that you never got the notice and demand?

"A. That is correct.

"Q. Do you know how long it takes mail to get from El Dorado, Arkansas to Caracas, back in those days?

\*   \*   \*   \*   \*   \*

"Q. I am talking about the kind of correspondence that your father generally sent to you?

"A. Five to eight days.

"Q. Then if your father had mailed it to you say by the 20th of August you would have had it by the 1st of September, 1955?

"A. I should have had it then.

"Q. I show you a two-page document I have marked plaintiff's Exhibit No. 3, the original, the first page is a certification, and ask you to look at the second page, do you recognize that as a notice and demand?

"A. I received some (sic) similar to this on November 25, 1960, from the local Revenue Service when I requested a copy of whatever documents they had in their file.

[Plaintiff's Exhibit 3 marked for identification.]

"Q. Now, you were requested in a subpoena to bring the original of this document—do you have it?

"A. No, I do not have it."

If this testimony of defendant be construed as an absolute denial by him that he received the original IRS Form 17 which was mailed to the El Dorado address in August, the Court is called upon to determine whether such denial is sufficient to overcome the evidentiary presumption or inference that if the notice was sent on from El Dorado to Caracas by Lehigh, Sr. it was received by defendant in due course of post. In weighing defendant's denial it must be remembered that he is the party defendant, and that he has a vital financial interest in the outcome of this case. The evidence discloses that throughout the period of time here involved he was in communication with his father and received other items of mail which his father transmitted to him. There is no evidence that any com-

munication sent by the father from El Dorado to Caracas was not received by the son. Caracas is a large city in a civilized country, and there is nothing to suggest that the postal employees or other persons there or at any other point along the route that the communication would have taken between El Dorado and defendant's actual mail box in Caracas were inefficient or likely to misplace the notice. In such circumstances the Court is simply not willing to accept defendant's denial.

On the other hand, if in his testimony defendant simply denied that he received any notice and demand dated *August 15, 1955,* and referring to a tax deficiency for the year *1953,* which is the document described by defendant's counsel on direct examination, or if defendant is simply denying that he received a document exactly like Plaintiff's Exhibit 3, including the pencilled deletion of "1954" and the substitution of "1953," likewise in pencil, and also including the pencilled figures "$87.88," then defendant is not denying receipt of the actual notice mailed to him. Parenthetically, the Court points out that the notice was not "dated" August 15, 1955, but August 16, 1955.

In either event, the Court finds from a preponderance of the evidence that the August 1955 notice was in fact received by defendant, and that he had ample time to apply to the Tax Court for relief had he cared to do so.

■ There remains for determination the question of whether the August 1955 notice was sufficient in form and substance to constitute compliance with the statute. In approaching this question the Court recognizes that the statute does not prescribe any particular form or content of notice, that any form is sufficient if it serves to advise the taxpayer that there has been a deficiency determined or assessed and to advise him of the amount of the deficiency and the year with respect to which such deficiency has been determined or assessed, or at least to give the taxpayer enough information so that he is not deceived as to the taxable period.

In Merten's op. cit. § 49.132 it is said:

"The Code does not require that the notice of deficiency be signed or that it be in any special form. Difficulty has sometimes arisen therefore as to whether a notice of deficiency as contemplated by the Code has been sent by the Commissioner. Generally, it may be said that the notice of deficiency contemplated by the Code is a formal communication to the taxpayer concerning the proposed deficiency in tax."

Merten's then goes on to quote from Commissioner of Internal Revenue v. Forest Glen Creamery Co., 7 Cir., 98 F. 2d 968, 971, as follows:

"The Commissioner is required to send to the taxpayer, by registered mail, a notice of his determination. The statute does not prescribe either the form or substance of the notice, but we assume that to be a notice, within the intention of the Revenue Act, the communication must inform the taxpayer that a deficiency tax has been determined and either must state the taxable period in respect to which it has been assessed or at least give enough information that the taxpayer reasonably could not be deceived as to the taxable period. * * * "

The same principles are stated in Commissioner of Internal Revenue v. Stewart, 6 Cir., 186 F.2d 239; Irish v. Commissioner of Internal Revenue, 3d Cir., 129 F.2d 468; Ventura Consolidated Oil Fields v. Rogan, 9 Cir., 86 F.2d 149, cert. den. 300 U.S. 672, 57 S.Ct. 610, 81 L.Ed. 878; Commissioner of Internal Revenue v. Oswego Falls Corporation, 2 Cir., 71 F.2d 673; Helvering v. Continental Oil Co., C.A.D.C., 68 F.2d 750, cert. den. 292 U.S. 627, 54 S.Ct. 629, 78 L.Ed. 1481; Tyson v. Commissioner of Internal Revenue, 7 Cir., 66 F.2d 160; McDonnell v. United States, Ct.Cl., 59 F.2d 290, 75 Ct. Cl. 155, aff'd 288 U.S. 420, 53 S.Ct. 410, 77 L.Ed. 869.

The Court also recognizes that the notice need not advise the taxpayer of his right to resort to the Tax Court. Thom-

aston Cotton Mills v. Rose, 5 Cir., 62 F. 2d 982; McDonnell v. United States, supra; Ventura Consolidated Oil Fields v. Rogan, supra. And it has been said that a typographical error in the notice of deficiency as to the years involved will be ignored where the petitioner was not misled by the inconsistency between the first page and the statement which together made up the deficiency notice. Merten's op. cit. § 49.132, Cum.Supp., citing St. Paul Bottling Co., 34 T.C. 1137.

■ However, the Court has seen no case holding that a mere "Statement of Income Tax Due," such as was mailed to defendant, or any comparable document, has ever been considered to qualify as a statutory notice. That the statement mailed to defendant was not intended as a statutory notice is evidenced by the fact that in September a full and formal notice was mailed to defendant, albeit to the wrong address. And the Court has grave doubt that the requirement of the statute is satisfied by the mailing of such a statement as that which the defendant received, even if such statement were free from error.

The Court is not required to resolve that doubt, however, because the notice was not only incorrect as to the tax year involved, but in addition it failed to identify certain figures which should have been identified under the terms of the statement itself. It has already been pointed out that whereas the jeopardy assessment had been made with respect to 1953, the statement mailed to defendant referred to 1954. To compound that error the evidence discloses that defendant was furnished by his father with a newspaper report which reflected that in August 1955 the Government had filed a tax lien against defendant for the year 1954.

As to the figures which the statement failed to identify, the notice states that all amounts shown in the column headed "Assessment" are for tax unless identified as penalty by letter "P" or interest by letter "I." As will have been observed from the foregoing reproduction of the statement, four amounts appeared. None of those amounts showed any identifying symbol except the final figure of $21,-400.78, which is identified as a penalty by the letter "P." Hence, a person examining said statement would naturally infer that the other three amounts were for tax, and such simply was not the case.

The "Statement" attached to the formal notice of deficiency mailed in September shows that the tax liability for 1953 was $246,931.96, and that figure corresponds to the first amount shown on the statement received by defendant after making allowance for the $87.88 abatement. The "Statement" then goes on to say that penalties assessed were $36,216.70. Now, $36,216.70 is the sum of the two final amounts shown on the statement received by defendant, but only the last of those amounts is identified as penalty. It might be surmised that the second amount shown on the statement mailed to defendant, namely the $20,996.10, which appears from the statement to have been an item of tax is not such. It may have been an interest charge, but it is not so identified on the statement.

In view of the error in tax year which has been mentioned and in view of the other infirmities of the August statement, the Court is of the opinion that it was an insufficient notice, and so holds.

It may very well be true that the defendant subjectively knew that his tax difficulties with the Government involved 1953 rather than 1954 since there is nothing to indicate that in 1954 or in any year other than 1953 he had received money which could result in an income tax liability of almost $250,000. But, the defendant did not know necessarily that the reference to the year 1954 was a mere typographical error. When he saw "1954" on the statement and when he learned that the Government had filed a tax lien for 1954, he may have thought that the Government's error had been in assessing him for 1954 rather than for 1953. In such circumstances, the error would have been fatal, for defendant's winnings were taxable with respect to

1953 if at all, and certainly defendant was not under any obligation to inform the Government of such a mistake.

■ Counsel for the Government say that if defendant prevails in this action he will avoid a tax liability justly due by means of a "technical defense." That statement is both true and immaterial. Any procedural defense is in a sense "technical." The procedures set forth in the Internal Revenue Code were prescribed for the protection of both Government and taxpayer. Neglect to comply with those procedures may entail consequences which the neglecting party must be prepared to face, whether such party be the taxpayer or the Government.

Let judgment be entered dismissing the complaint.