John E. **KENNEDY** and Mary A. Kennedy, Plaintiffs,

v.

**UNITED STATES** of America and Donald Alexander, Commissioner of Internal Revenue, Defendants.

No. G75–468 C.A.

United States District Court, W. D. Michigan, S. D.

Nov. 3, 1975.

**620**

Mohney, Goodrich & Titta, Grand Rapids, Mich., for plaintiffs; Edward B. Goodrich, Thomas P. Hogan, Grand Rapids, Mich., of counsel.

Donald A. Davis, Asst. U. S. Atty., Grand Rapids, Mich., James Ferraro, Tax Div., Justice Dept., Joseph Falcone, Office of the Regional Counsel, Internal Revenue Service, Detroit, Mich., for defendants.

## OPINION

FOX, Chief Judge.

This case concerns the application of 26 U.S.C.A. § 6212(a), (b)(1) (1975 Supp.)[1] to the situation of one John E. Kennedy.[2] Kennedy seeks to enjoin the United States from collecting or assessing taxes based on the notice of deficiency mailed January 7, 1975. A temporary restraining order was issued by this court on October 7, 1975, and it was extended by stipulation until November 3, 1975.[3] This court has jurisdiction under 28 U.S.C.A. § 1340, and an injunction may issue if the taxpayer is correct on the merits. 26 U.S.C.A. §§ 6213(a), 7421(a).

### I.

Based on the stipulations, testimony, and exhibits, I find the following to be facts. Plaintiff's accountant, Clyde Ayers, thought that the address "R.R. #1 Box 146, Lowell, Michigan," was an equivalent address to "811 Shepard Drive, Lowell, Michigan." That however is not the case.

The Box 146 address was an address used by the Lowell Post Office for a cottage owned by John Kennedy—the street address of the cottage is 4932 Abrahams Drive, Lowell, Michigan. During 1971 the Lowell Post Office switched from Box addresses to street addresses.

The accountant, Ayers, used the Box 146 address in several communications with the Internal Revenue Service, in particular the applications for extensions of time to file income tax returns. In addition the Internal Revenue Service possessed two forms entitled "Power of Attorney." One, dated July 17, 1972, was executed jointly by Mr. and Mrs. Kennedy. The second, dated September 25, 1972, was executed solely by Mr. Kennedy. Both stated the address of

---

1. § 6212 provides, in part:
   "(a) *In general.*—If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 42 or 43, he is authorized to send notice of such deficiency to the taxpaper by certified mail or registered mail.
   (b) *Address for notice of deficiency.*—
   (1) *Income and gift taxes and taxes imposed by chapter 42.*—In the absence of notice to the Secretary or his delegate under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 42, or chapter 43, if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A,

chapter 12, chapter 42, chapter 43, and this chapter even if such taxpayer is deceased or is under a legal disability, or, in the case of a corporation, has terminated its existence.

2. Counsel for the Government has represented to the court that the tax assessment against Mrs. Kennedy will be abated and her property returned. Def. Memorandum p. 2.

3. Defendants have moved to dissolve the Temporary Restraining Order insofar as it corncerns amounts which the taxpayer has admitted, per his filed returns, are due and owing. Kennedy no longer objects. Therefore, the motion is granted.

the taxpayer as the Box 146 address. (In the first it was stated as the address of both Mr. and Mrs. Kennedy. In the second it was stated as the address of John E. Kennedy.) Kennedy, himself, did not pay attention to the address used on any of the above-mentioned items.

On the other hand there is substantial evidence that the Internal Revenue Service, for purposes other than mailing the "30 day" or "90 day" letters, considered Kennedy's address to be 811 Shepard Drive. As early as April 27, 1971, Internal Revenue Service employee Jerome Paulsen used the Shepard Drive address for Mr. and Mrs. Kennedy in an internal report. Pl. Ex. 6.

An Internal Revenue Service summons directed to Ayers, on November 8, 1971, listed the address of John E. Kennedy as being 811 Shepard Drive. Pl. Ex. 1. Special Agent Francis A. Lahouillier testified that the Shepard Drive address was the only one he knew. On cross examination, by the Government, this agent responded affirmatively when asked if the address was used in order to identify the taxpayer to the accountant. In Lahouillier's final report dated July 27, 1972, he stated the address of John E. Kennedy to be:

> "6101 Hogans Creek Road
> Margate, Florida 33063
> and
> 811 Shepard Drive
> Lowell, Michigan 49531."
> Pl. Ex. 4.

Plaintiff's Exhibit 16 is also significant. On (what is believed to be) the back side of this card, under the title "Date—Action taken," are several entries. In particular the fourth entry is as follows:

> "9–17–74   Req L25a *to new address*
> *RR3—811 Shepard Dr.*
> *Lowell 49331 M. E. M.*"
> (Emphasis supplied.)

On the front of the card is a computer typed address for John E. & Mary Kennedy—the Box 146 address—which is crossed out in ink. The "Shepard Drive" address is handwritten just below the typed address.

John Kennedy owned the Abrahams Drive cottage until after the 90-day letter was sent in this case. He regularly inspected his mail box for letters, but received nothing but "junk" mail at that address. Kennedy regularly visited his family at the 811 Shepard Drive address. Aside from the cottage and his family's residence, Kennedy has used a large number of addresses, business and personal, since 1969. Deposition of John Kennedy, p. 31–32. However there is no evidence that the Internal Revenue Service ever used (or knew of) any of those other addresses except the Margate, Florida address noted above.

In October 1973, defendant mailed a "30-day letter" to Kennedy at the Box 146 address and sent a copy to Ayers. Ayers contacted Kennedy and informed Kennedy of the letter. Kennedy never received the 30-day letter by mail from the Government. The Government has not offered into evidence the envelope in which the letter was sent. Def. Ex. 4 is the letter received by Ayers. I find, in the absence of contrary evidence, that the 30-day letter mailed to John Kennedy at Box 146 was returned unopened.

On January 7, 1975, the Commissioner of Internal Revenue mailed, by certified mail, a Notice of Deficiency ("90-day letter") to John Kennedy at the Box 146 address. That address was used because it appeared on the power of attorney forms and the extension applications. That letter was never received by Kennedy. In fact, no attempt at delivery was even made by the Lowell Post Office. Mistakenly, the Post Office personnel thought Kennedy no longer received mail at the cottage. As a result the letter was almost immediately returned to the Internal Revenue Service, although the normal holding period for a certified letter is at least 10 days. The envelope, Pl. Ex. 15, does not bear a "return receipt requested" form nor was

there any evidence that a return receipt was requested.

The letter was received by the Government on January 14, 1975. Internal Revenue Service employee Eleanor Baron brought the return to the attention of agent Edward Segal, who had determined the "last known address" for the purpose of the original mailing. Despite the short period of time which had expired since the original mailing and the information in the file concerning the Shepard Drive address, Segal simply made the notation "mailed to last known address. E.C.S." on the paper Baron had attached to the letter. The envelope was placed in the file with no further attempt to get the notice to Kennedy.

At the time the 90-day letter was originally mailed, a copy was sent to Ayers. Ayers informed Kennedy that further communications with the Internal Revenue Service had been received. Ayers did *not* pass on the substance of the letter, i. e., that it was a notice of deficiency giving the taxpayer 90 days to petition the Tax Court or that the deficiency, with penalties, was approaching four million dollars.

Following issuance of the 90-day letter, the Internal Revenue Service continued to contact Kennedy by use of the Shepard Drive address. Plaintiff's Ex. 9 contains a list of those contacts. The *Final Notice Before Seizure* was sent to the Shepard drive address in September 1975. Pl. Ex. 2. Additionally, the address used by the Internal Revenue Service in its Notices of levy (Pl. Ex. 3) used the Shepard Drive address as the taxpayer's address.

The Government contends that no tax returns were filed by Kennedy for 1968, 1969 and 1970 until April 1975. The forms dated April 15, 1975, covering the years 1968–72 indicated plaintiff's address as Box 146.

To summarize, I find that of the two addresses ("Box 146" and "Shepard Drive"), the Government never successfully contacted the Kennedys at the Box 146 address. As a result of the non-de-livery, in 1973, of the 30-day letter and the information received in September 1974, the Commissioner knew, or should have known, that R.R.1 Box 146, Lowell, Michigan, was not the last known address of John E. Kennedy. John E. Kennedy did *not* receive *actual* notice of the Notice of Deficiency. Finally, the failure to deliver the 90-day letter to the Abrahams Drive cottage was a result of a mistake by the Lowell Post Office. Actual notice would have been received by Kennedy if the letter had been delivered.

Prepayment of the claimed deficiency would result in Kennedy's bankruptcy.

## II.

John E. Kennedy does not seek to avoid payment of taxes in this case. He merely wishes to be able to present his case to the Tax Court where the Government's claims can be ruled on before payment is required. On the other hand, the Government if it is correct in its contentions in this case, ostensibly does not seek to deprive Kennedy of his day in court. He would still be able to file for a refund. However, because the claimed deficiency is so large and its impact so significant, the adequacy of a refund suit may be questionable.

▆▆ Initially, it should be emphasized that the purpose of the statutes dealing with the Notice of Deficiency is to give the taxpayer notice—"to give him an opportunity to have [the Commissioner's] ruling reviewed by the Tax Court before it becomes effective." *Commissioner v. Stewart,* 186 F.2d 239, 241 (6th Cir. 1951). In *Stewart,* the court held that these statutes would not be technically construed where that purpose had been fulfilled. See also *Floyd R. Clodfelter,* 57 T.C. 102 (1971). It would likewise seem that technical construction against the taxpayer is inappropriate where the purposes of the statutes have not been fulfilled, through no fault of the taxpayer. Cf. *Tenzer v. Commissioner,* 285 F.2d 956, 958 (9th Cir. 1960).

■ Courts have put various characterizations upon the term "last known address." I conclude that it is best seen as the address which the Internal Revenue Service reasonably believed the taxpayer wished it to use. *Delman v. Commissioner*, 384 F.2d 929 (3rd Cir. 1967), cert. denied, 390 U.S. 952, 88 S.Ct. 1044, 19 L.Ed.2d 1144 (1968). However, the Commissioner is required to exercise reasonable care and diligence in ascertaining and mailing a deficiency notice to the correct address of the person or persons to whom the statutory notice must be sent. *Arlington Corp. v. Commissioner*, 183 F.2d 448, 450 (5th Cir. 1950); *Estate of Francis P. McKaig, Jr.*, 51 T.C. 331 (1968).

There are a number of cases, cited by the Government, which would appear to construe the term "last known address" quite strictly against the taxpayer. E. g., *Berger v. Commissioner*, 404 F.2d 668 (3rd Cir. 1968), cert. denied, 395 U. S. 905, 89 S.Ct. 1744, 23 L.Ed.2d 218 (1969); *Alta Sierra Vista, Inc.*, 62 T.C. 367 (1974); *Luhring v. Glotzbach*, 304 F.2d 556 (4th Cir. 1962). These cases are distinguishable.

In *Daniel Lifter*, 59 T.C. 818, 823–24 (1973), the court noted that what is said about "last known address" is often dictum since actual notice of the deficiency is usually received by the taxpayer within ample time to file a timely petition with the Tax Court. See also *Berger v. Commissioner*, supra, 404 F.2d at 673. The lack of actual notice in our case distinguishes it from most of the cases cited by the Government.

This is not the first case, however, where actual notice within the time period is lacking. Actual notice was also missing in *Luhring v. Glotzbach*, supra. *Harvey L. McCormick*, 55 T.C. 138 (1970); *Frank Carl Seppe*, ¶ 75,089, P–H T.C. Memo (1975); *Patrick Michael O'Brian*, 62 T.C. 543 (1974); *Estate of Francis P. McKaig, Jr.*, supra; *Brown v. Lethert*, 360 F.2d 560 (8th Cir. 1966); *Firnhaber v. Nelson*, 209 F.Supp. 777 (E.D.Wis.1962). Many of these cases are also distinguishable from the instant one.

In cases where delivery was attempted, but the letter was either refused or not called for after a notice of attempted delivery was ignored, the taxpayer has lost; *Brown v. Lethert*, supra; *Firnhaber v. Nelson*, supra. In our case no delivery was even attempted.

■ In some cases, it has been held that the Government has the right to rely on the address used in the taxpayer's tax returns for the particular years the deficiency involves. E. g., *Harvey L. McCormick*, supra; *Luhring v. Glotzbach*, supra. In our case, however, the Government concedes that the returns themselves were not filed until after the statutory notice was sent. While the information in the applications for extension was legitimately considered by the Internal Revenue Service, such documents will not be held to be as controlling as an actual return. The Commissioner was required to consider all the circumstances—in particular the notification of September 1974 and the fact that the October 1973 "30 day letter" was never received. See *United States v. Lehigh*, 201 F.Supp. 224, 229 (W.D. Ark.1961), appeal dismissed on appellant's motion, 305 F.2d 377 (8th Cir. 1962). It is of no small significance that the 811 Shepard address was not simply an address used on some subsequent tax return. That address was intimately involved in the Government's investigation of the tax years this case concerns. Compare *Frank Carl Seppe*, supra.

While the Government points to the large number of addresses which plaintiff has used since 1969, plaintiff does not contend any were the address to which notice should have been sent. Indeed, in view of his failure to notify the Commissioner of those addresses, such a position would probably be unsupportable. Plaintiff's contention is simply that in view of all the circumstances,

Defendant should have sent the 90-day letter to the Shepard Drive address. I agree.

The Government's final contention is that plaintiff should be estopped from contending that the Box 146 address was not his last known address, since he used that address, albeit after January 7, 1975, when he filed his returns in April 1975. The contention is not without merit. Cf., *Bergfeld v. Campbell,* 290 F.2d 475 (5th Cir. 1961). Had the letter been delivered to the Box 146 address on Abrahams Drive, even if no actual notice resulted, plaintiff could very well have been estopped from pressing his claim in this court.

Estoppel is an equitable doctrine, however. The doctrine should be applied in such a manner as to result in fairness to both sides of a case. I conclude that the solution reached in *Estate of Francis P. McKaig, Jr.,* supra, is appropriate to the instant case also, although McKaig did not involve estoppel.

Aside from the estoppel issue, the McKaig case is quite analogous to ours. The court refused to technically apply the last known address provisions against the taxpayer where the court found that the Commissioner should have been more diligent before mailing the notice. Even assuming the address used was the last known address, the notice was ineffective since the court viewed the facts as establishing that "the Post Office Department diverted [the mailing]. Petitioner cannot be held responsible for this." 51 T.C. 336. Since the Commissioner had information of the correct address, when the letter was returned marked "unclaimed" as well as when it was mailed, he "should have known something was wrong and was in a position to do something about

it . . . . So it was then up to the [Commissioner] to make sure that he had the last known address." 51 T.C. 336–337.

■ In some respects Kennedy's case is a stronger one than Mrs. McKaig's, since it appears that attempted delivery at the correct address was made in McKaig. 51 T.C. 332. In any event I conclude that based on the totality of the circumstances, both before and after the Notice of Deficiency was mailed, the Internal Revenue Service should have known something was wrong. Since it possessed sufficient information to determine that plaintiff could be reached throught the 811 Shepard Drive address, it should have done so.[4]

Because of the analogy to McKaig, and because of the estoppel argument, I do not hold that the 90-day letter was null and void. Instead the date of actual notice—September 13, 1975—should be considered the date of mailing, leaving the taxpayer 90 days from that time to petition the Tax Court. See also *Tenzer v. Commissioner,* supra; *Arlington Corp. v. Commissioner,* supra.

The admonition of Judge Chambers, in *Tenzer,* 285 F.2d 958, supra should be heeded. Courts, as well as the Commissioner, should try to make the statute work. "Anyone should try to make it work. And we have sought the true meaning of Congress, believing it intended to make it work." That is what I have tried to do in this case.

The injunction is granted. Because the motion to dissolve part of the Temporary Restraining Order was granted, the parties are directed to prepare a proposed injunction which is consistent with this opinion and the partial dissolution of the Temporary Restraining Order.

4. *Williams v. United States,* 264 F.2d 227 (6th Cir.), cert. denied, 361 U.S. 862, 80 S.Ct. 118, 4 L.Ed.2d 102 (1962), is thus distinguishable. There, the taxpayer had expressly requested all communications from the I.R.S. be mailed to the address of his attor-

ney-in-fact. Before mailing the Notice of Deficiency to that address, the I.R.S. had no reason to question its correctness. While the taxpayer's death revoked the power of attorney, it did not supply the I.R.S. with an alternative address.