## MILLSPAUGH BLDG. CORP. v. COMMISSIONER OF INTERNAL REVENUE.

No. 21, Docket 21985.

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1951.

Decided Dec. 3, 1951.

888

Francis C. Leffler, New York City, for petitioner.

Charles Oliphant, Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and John J. Kelley, Jr., Special Assts. to the Atty. Gen., for respondent.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner, Millspaugh Building Corporation, was organized in 1919 by Stanley Millspaugh, who, until his death in February 1943, was its principal stockholder and its sole executive officer. In 1919 he also organized the Tompkins Dry Goods Company, Inc. The petitioner rented a department store on its property to that company and also rented a double store thereon to a dry cleaner and a parking lot adjacent to both buildings. The only other asset of the petitioner consisted of land which it had purchased for $1,000 in 1944. Upon Mr. Millspaugh's death he was succeeded in the management of his enterprises by his widow Eudora H. Millspaugh who became president of the petitioner and president and manager of the department store enterprise. She was the sole executive officer of the petitioner and the reasonableness of her salary for the years 1944 and 1945 is in question on this appeal.

By Mr. Millspaugh's will he created a trust of his principal assets for the benefit of his widow and his five children. He appointed her his sole executrix and appointed her and one John S. Sammis, president of the Orange County Trust Company at Middletown, New York, trustees of the trusts under his will. Under those trusts the stocks of the petitioner and of the Tompkins corporation were to be held by the trustees, and the income to be paid to the widow during her life or until her remarriage, with the further provision that as each of the five children reached 21 years one-tenth of the income was to be paid to such child. Upon the widow's death the principal was to go to the children except that if the stock of the petitioner was sold one-sixth of the proceeds was to go to the widow and the balance to the children. There was no proof that any of the children had become 21 years of age.

At his death Mr. Millspaugh owned 382 of the shares of the petitioner, his widow owned 276 and a qualifying share was held by one Walter J. Seeley. Thus, during the tax years the trustees held 58 per cent of the total.

During those years Mrs. Millspaugh, as president of the petitioner, received an annual salary at the rate of $6200 which was at the same rate that her husband was paid during January and February 1943, immediately preceding his death. In the years from 1936 to 1940 inclusive Mr. Millspaugh was paid a salary of $8,000 per year; in 1941 and 1942, $5,000, and during January and February 1943—the two months preceding his death—at the rate of $6,200. Mrs. Millspaugh's salary for the tax years was voted by the board of directors at the same rate under a resolution moved by Sammis, the cotrustee, and seconded by Seeley. During the tax years Mrs. Millspaugh was at the petitioner's place of business during business hours, supervised the collection of rent from the several tenants totalling $20,820 in 1944 and $20,857.50 in 1945. Of these amounts $18,000 was paid each year by Tompkins

Dry Goods Company, Inc.; $720 was paid as rental for the parking lots, and the balance was paid by the remaining stores.

Mrs. Millspaugh signed all the checks on the petitioner's bank account, supervised the heating of buildings on the premises including the purchase of oil, attended to the making of repairs, arranged for the insurance and paid interest and amortization on the mortgages on the premises. She was also president of the Tompkins Dry Goods Company, Inc., which had annual sales of about $500,000 and regularly had 50 employees, with seasonal holiday numbers of from 75 to 80. With respect to the Tompkins Dry Goods Company, Mrs. Millspaugh received a salary of from $7,500 to $9,000 a year in 1944 and 1945. Of the 813 shares of Tompkins stock the trustees under the will of Stanley Millspaugh owned 609 shares, W. J. Seeley, vice president and general manager, owned 123 shares, and 41 shares remained in the treasury of the company, and 4 employees owned the remaining 40 shares.

The Commissioner permitted the petitioner to deduct from its income only $2,012.04 as the salary of Mrs. Millspaugh as president of the petitioner for 1944, and $2,200 as her salary for 1945 and those allowances were approved by the Tax Court. What constituted reasonable compensation for services rendered under the particular circumstances was a pure question of fact which should not be revised unless clearly erroneous. Long Island Drug Co. v. Commissioner, 2d Cir., 111 F.2d 593, certiorari denied, 311 U.S. 680, 61 S.Ct. 49, 85 L.Ed. 438. This view is in accord with the requirements of Section 23 (a)(1)(A) cited in the margin.[1] The taxpayer failed to establish what would ordinarily be paid for like services in similar enterprises. It produced no evidence to overthrow the estimate of the Commissioner except that of

the cotrustee who was not a disinterested appraiser as it was his duty to get all he reasonably could for his *cestui que* trust. The services of Mrs. Millspaugh were largely signing of checks on funds which so far as the income was concerned was chiefly her own. The bookkeeper of the petitioner only received an annual salary of $100. We cannot see that the limitation of Mrs. Millspaugh's salary to $2,200 was an arbitrary estimate of the value of her rather inconsiderable services.

The orders appealed from are affirmed.

---

1. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
   "(a) Expenses
   "(1) Trade or business expenses.
   "(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *." 26 U.S.C.A. § 23(a) (1) (A).