ROBERT LOUIS STEVENSON APARTMENTS, INC., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17701.

United States Court of Appeals
Eighth Circuit.

Nov. 3, 1964.

Ronald M. Mankoff, of Durant, Mankoff & Davis, Dallas, Tex., made argument for petitioner and filed brief with Wentworth T. Durant and Robert Edwin Davis, of Durant, Mankoff & Davis, Dallas, Tex.

Lawrence B. Silver, Atty., Tax Div., Dept. of Justice, Washington, D. C., made argument for respondent and filed brief with Louis F. Oberdorfer, Asst. Atty. Gen., and Meyer Rothwacks and Gilbert E. Andrews, Attys., Tax Division, Dept. of Justice, Washington, D. C.

Before VOGEL, VAN OOSTERHOUT and MEHAFFY, Circuit Judges.

VOGEL, Circuit Judge.

By this petition for review Robert Louis Stevenson Apartments, Inc., seeks to have set aside a determination of the Tax Court that compensation paid to the corporation's president and sole stockholder of $7,200 per annum was excessive and that $2,400 was a reasonable allowance therefor.

■ At the outset we are presented with a motion by the Commissioner asking that the petition for review be dismissed as not having been timely filed. We will consider that motion first.

26 U.S.C.A. § 7483 provides:

"The decision of the Tax Court may be reviewed by a United States Court of Appeals as provided in section 7482 if a petition for such review is filed by either the Secretary (or his delegate) or the taxpayer within 3 months after the decision is rendered. * * *"

A petition filed subsequent to the expiration of the three-month period is unavailing and the Court of Appeals has no jurisdiction to review such determination. Lasky v. C. I. R., 9 Cir., 1956, 235 F.2d 97, affirmed 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598.

The facts upon which the Commissioner's motion to dismiss is predicated are as follows:

On January 3, 1964, the Tax Court filed its Memorandum Findings and Conclusions in this case. On January 6, 1964, three days later, the Tax Court entered its decision. On January 27, 1964, the taxpayer filed in the Tax Court a "Motion to Correct the Court's Memorandum Findings of Fact and Opinion". The motion sought to have stricken from the Tax Court's Findings and Opinion the following statements:

1. " * * * The record is indefinite and unclear as to which of the above businesses and properties Floy [Mrs. Randal] continued to own and operate during the year in issue and as to how much time she spent in connection with these endeavors."

2. " * * * and especially the extent of Floy's [Mrs. Randal's] other activities and the rather inconsiderable amount of time which she spent in connection with petitioner's affairs during the year in issue * * *."

The Tax Court denied the motion to correct on February 3, 1964. The instant petition for review of the Tax Court's decision was filed on April 24, 1964. The Commissioner argues that inasmuch as more than three months had elapsed between January 6, 1964, the date of the decision, and April 24, 1964, the date of the filing of the petition for review, such petition was not timely.

Rule 19(e) of the Rules of Practice, Tax Court of the United States, 26 U.S.C.A., provides that motions "for retrial, further trial, or reconsideration" must be filed within thirty days after service of the opinion except by special leave. Rule 19(f) provides that motions "to vacate or revise a decision" must be filed within thirty days after the decision has been rendered except by special leave. The Commissioner points out that nothing was stated in the rules of the Tax Court with respect to the effect on the three-month period for filing petitions for review, of either a motion for reconsideration under Rule 19(e) or a motion to vacate under Rule 19(f). However, he concedes that:

" * * * By judicial decision, however, it has been established that motions which go to the decision, i. e. which seek to overturn the result reached by the Tax Court, will delay the running of the 3 month period. Griffiths v. Commissioner, 50 F.2d 782 (C.A. 7th) (rehearing); Burnet v. Lexington Ice & Coal Co., 62 F.2d 906 (C.A.4th) (vacate); Helvering v. Continental Oil Co. [63 App.D.C. 5], 68 F.2d 750 (C.A.D.C.), certiorari denied, 292 U.S. 627 [54 S.Ct. 629, 78 L.Ed. 1481] (rehearing)."

The Commissioner argues that the taxpayer's motion "to Correct the Court's Memorandum Findings of Fact and Opinion" does not fall within the "exceptions" which delay the running of the time for appeal because it did not "go to the decision" of the Tax Court. We believe the Commissioner is incorrect. As will be pointed out in the latter part of this opinion, if the taxpayer's motion, whatever he chose to label it, had been granted, the decision of the Tax Court necessarily would have had to have been revised.

The Commissioner points out that if Tax Court proceedings were governed by the Federal Rules of Civil Procedure the taxpayer would be in no difficulty because Rule 73(a) expressly provides that the time for filing an appeal will run from the date of entry of an order granting or denying a motion to amend findings of fact "whether or not an alteration of the judgment would be required if the motion was granted". We agree with the Commissioner that the Federal Rules of Civil Procedure do not apply to proceedings in the Tax Court. Lasky v. Commissioner, supra; Starr v. Commissioner, 7 Cir., 1955, 226 F.2d 721, 722, certiorari denied 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 859; Commissioner of Internal Revenue v. Licavoli, 6 Cir., 1958, 252 F.2d 268, 272; Katz v. Commissioner, 2 Cir., 1951, 188 F.2d 957, 959.

But under our view of this case it is immaterial whether the Federal Rules of Civil Procedure apply because we believe the taxpayer's motion, if granted, would have necessitated a revision of the decision of the Tax Court.

In dealing with a similar problem but under what was then § 8(c) of the Act of February 13, 1925, C. 229, 43 Stat. 940, 28 U.S.C.A. § 230, the Supreme Court, in reversing the Ninth Circuit in Leishman v. Associated Wholesale Electric Co., 1943, 318 U.S. 203, said beginning at page 204, 63 S.Ct. 543, at page 544, 87 L.Ed. 714:

" * * * The Circuit Court of Appeals *sua sponte* held it had no jurisdiction because the appeal was taken more than three months after the entry of judgment, contrary to 28 U.S.C. § 230, 28 U.S.C.A. § 230. In so holding that court recognized *the general rule that where a petition for rehearing, a motion for a new trial, or a motion to vacate, amend or modify a judgment is seasonably made and entertained, the time for appeal does not begin to run until the disposition of the motion.* (Cases cited in f.n. 3 omitted here.) But this case was differentiated on the ground that the instant motion was not one to amend the judgment but merely one to amend and supplement the findings and conclusions. 9 Cir., 128 F.2d 204. * *

"We think that petitioner's time to appeal did not begin to run until the disposition of his motion under Rule 52(b) on June 9, 1941, and accordingly that his appeal was timely. The motion was not addressed to mere matters of form but raised questions of substance since it sought reconsideration of certain basic findings of fact and the alteration of the conclusions of the court. In short the necessary effect was to ask that rights already adjudicated be altered. Consequently it deprived the judgment of that finality which is essential to appealability. Cf. Zimmern v. United States, 298 U.S.

167, 56 S.Ct. 706, 80 L.Ed. 1118; Dept. of Banking, State of Nebraska v. Pink, 317 U.S. 264, 63 S.Ct. 233, 87 L.Ed. 254. *It is immaterial that petitioner did not specifically request the amendment of the judgment, and the distinction based on this failure to request by the court below is artificial and untenable.* If the motion had been granted and the requested amended and supplemental findings made, the judgment would have to be amended or altered to conform to those findings and the conclusions resulting from them." (Emphasis supplied.)

In Saginaw Broadcasting Co. v. F. C. C., 1938, 68 App.D.C. 282, 96 F.2d 554, 558, certiorari denied 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391, the court said:

"In the Federal courts the rule is well established that in judicial proceedings the filing of a petition for rehearing, or of a motion for new trial, will suspend the running of the period within which an appeal may be taken, and that this period then begins to run anew from the date on which final action is taken on the petition or motion, whether it be denied or granted. The rule as above stated applies even though a statute fixes the time within which appeal may be taken as a definite period from the entry of judgment. (Citations omitted.)

"This rule has been applied by this court, as well as by other circuit courts of appeals, to proceedings before the Board of Tax Appeals. Helvering v. Continental Oil Co., 1933, 63 App.D.C. 5, 68 F.2d 750; Helvering v. Louis, 1935, 64 App. D.C. 263, 77 F.2d 386, 99 A.L.R. 620; Commissioner of Internal Revenue v. Lincoln-Boyle Ice Co., 7 Cir., 1937, 93 F.2d 26; Burnet v. Lexington Ice & Coal Co., 4 Cir., 1933, 62 F.2d 906; Griffiths v. Commissioner, 7 Cir., 1931, 50 F.2d 782. In these cases the pertinent sections of the Revenue Act provided that the decision of the Board might be reviewed

on appeal 'within six months after the decision is rendered' and further, that 'a decision * * * shall be held to be rendered upon the date that an order specifying the amount of the deficiency is entered in the records of the Board.' In each case the appeal was taken more than six months after the order had been entered, but less than six months after the final decision of the Board upon a petition for rehearing. The courts held, nevertheless, that the appeals were timely."

The statements sought to be stricken by the taxpayer's motion in the instant case went to the core of the Tax Court's conclusion. Had the motion been granted, it would have necessitated the Tax Court's reversing its determination that petitioner was not entitled to pay Mrs. Floy Randal a salary of $7,200 per annum for it would have left that determination in mid air with no grounds for support except the presumption of correctness which attaches to the Commissioner's determination. In Commissioner of Internal Revenue v. Lincoln-Boyle Ice Co., 7 Cir., 1937, 93 F.2d 26, 27–28, the court stated:

" * * * So long as petitions for modification or review are pending, the Board has jurisdiction to modify its decision with respect to any part thereof, and neither party can be denied an appeal within three months from final disposition of the motion to modify the decision. Griffiths v. Commissioner, 50 F.2d 782 (C.C.A.7)."

The Commissioner's motion to dismiss the petition for review as being untimely must be denied.

■■■ We now concern ourselves with the main issue in the case; that is, whether or not the Tax Court erred in holding $7200 per annum as excessive compensation to the corporation's president and that only $2400 thereof should be allowed for the fiscal year ending September 30, 1960.

Taxpayer is a Missouri corporation organized in 1934. It owns a single apartment building, the Robert Louis Stevenson, in Kansas City, Missouri. The building was constructed in 1926, is seven stories in height and has four one-bedroom unfurnished apartments on each floor plus one basement apartment occupied by the janitor. The apartment building was well built and maintained but was not considered a luxury apartment because of its age and because it was not centrally air conditioned. Mr. and Mrs. Oscar D. Randal acquired all of taxpayer's stock on October 1, 1936. The property then had a basis of $10,000 for the land and $93,500 for the improvements. At that time it was subject to a mortgage of $67,500 which had been completely paid off prior to the tax year in issue here—the fiscal year ending September 30, 1960.

Mr. Randal died in June of 1954 and on July 12, 1954, Mrs. Randal was elected president of the taxpayer. She owned all of taxpayer's stock during the year in issue.

On the question of the value of Mrs. Randal's services to the petitioner, the uncontradicted and undisputed evidence before the Tax Court indicated that:

Following the death of her husband and Mrs. Randal's election as petitioner's president on July 12, 1954, she has served continuously in this capacity. She handled the petitioner's receipts on a monthly basis after payment of its ordinary bills by the resident manager, Frank L. Woodward, who received 5% of gross rentals as compensation, which in the year in question totalled $1,726. Her authorization was required for the payment of any of petitioner's bills in excess of $100. She maintained the petitioner's books and records, kept two bank accounts for the petitioner and was the only person authorized to write checks thereon. She did some work in connection with petitioner's income tax returns which were prepared by a certified public accountant. Mrs. Randal had the full ultimate responsibility for making petitioner's business decisions. In 1958, 1959

and 1960 she learned of the construction of several large new luxury apartment buildings planned for the neighborhood and she made the decision and formulated the plans to upgrade petitioner's apartment to meet the competition and to maintain and increase petitioner's rental income. During the particular year in issue (the fiscal year ending September 30, 1960) she consulted with an architect and determined the specific ways necessary to modernize and update petitioner's apartment building. During the year in question she personally priced refrigerators, stoves, kitchen cabinets, windows and doors for the modernization of petitioner's apartment building and selected new colors and light fixtures. Prior to 1954 Mrs. Randal had been active with her husband in the operation and ownership of a number of business and income real estate properties. She became an astute business woman by reason of her activity and experience acquired prior to 1954.

A corporate resolution was adopted by the petitioner's board of directors on July 12, 1954, directing the payment of a salary to Mrs. Randal as its president-treasurer of $7200 per year. The same salary was paid to Mrs. Randal during the succeeding years without any complaint until the year in question ending September 30, 1960. Petitioner paid dividends of $2100 in 1956, $10,000 in 1958, and $10,000 in 1959. During the year in question, 1960, petitioner transferred net income of $3500 to surplus and showed net worth at the end of that year of $85,000. Prior to the year in question Mrs. Randal testified that she had sold all of the properties she and her husband had previously managed with the exception of a residence in California and possibly a building on Fourth Street in Amarillo, Texas. Frank L. Woodward, the senior partner in Woodward & Company, an expert in the real estate management field in Kansas City, testified that he was familiar with petitioner's apartment building and had lived there for a number of years, also being the resident manager; that he was familiar with Mrs. Randal's activities as its president and that the sum of $7200 paid to Mrs. Randal for the year in issue constituted reasonable and just compensation for her services. As to Mr. Woodward, the Tax Court specifically stated:

"Frank L. Woodward qualified as an expert in the real estate management field in Kansas City, having been in that business for many years, and in addition he was entirely familiar with subject apartment, having lived there many years. He was also familiar with Floy's [Mrs. Randal's] activities as president and sole stockholder of petitioner, having served as resident manager of subject apartment since 1952.

"Mr. Woodward testified that in his opinion the sum of $7,200 paid to Floy during the year in issue constituted reasonable and just compensation for her services. *Considering the length of time Mr. Woodward has operated in the real estate field, we can assume that he was qualified to give opinion testimony as regards reasonable compensation under the facts here present; * *.*" (Emphasis supplied.)

To counteract or rebut the foregoing, the Commissioner offered no admissible evidence as to the reasonable value of Mrs. Randal's services to the petitioner. After reciting the facts with reference to the taxpayer's evidence as to the value of Mrs. Randal's services and accepting and approving of Mr. Woodward's qualifications, the Tax Court then stated:

"* * * but having carefully considered the entire record in this case, and especially the extent of Floy's [Mrs. Randal's] other activities and the rather inconsiderable amount of time which she spent in connection with petitioner's affairs during the year in issue, we must conclude that petitioner has failed to overcome the presumption of correctness attaching to the Commissioner's determination."

The two assumptions made by the Tax Court as to Mrs. Randal's "other activities" and "the rather inconsiderable amount of time which she spent in connection with petitioner's affairs during the year in issue" were attacked by the taxpayer's "Motion to Correct the Court's Memorandum Findings of Fact and Opinion", seeking to have them stricken. The reasons given by the taxpayer moving to strike were as follows:

"1. Contrary to the Court's statement the record is not 'indefinite and unclear as to which of the above businesses and properties Floy continued to own and operate during the year in issue.' The year in issue was fiscal year ending September 30, 1960. On cross-examination Floy testified she had sold all of the aforementioned properties except the California property in Santa Barbara and she was not sure whether she had sold the building on Fourth Street in Amarillo, Texas, at that time.

"Her testimony appears on pages 67 and 68 of the official transcript of the testimony, copies of which are attached hereto and incorporated herein by reference as Exhibit A. There is no other testimony or evidence on the subject in the record.

"2. There is nothing in the record which either does or is intended to prove 'the extent of Floy's other activities'. It is true that the footnote to the Court's opinion suggests petitioner 'made no more than two trips to Kansas City' in the year, but there is no suggestion as to how long she stayed on each trip. For anything the record shows she might have stayed in Kansas City six months on each occasion. In addition, but for the actual work performed by Mrs. Randal in planning and overseeing the remodeling work, Floy's work was such that it could as well be carried on anywhere. It did not require her presence in Kansas City. She kept the books and records, she checked and reviewed and paid the bills and took care of the bank accounts and payment of the taxes. She received from Mr. Woodward and reviewed a detailed account of the rentals and expenses each month regardless of where she might be."

If the motion to strike had been granted —and we think it should have been because the record in the main fails to support the statements—there would have been left only the presumption of the correctness of the Commissioner's determination of value upon which to rest the Tax Court's opinion. Accordingly, we hold that the Tax Court was clearly erroneous in concluding that the petitioner had failed to overcome the presumption of correctness. Here the Tax Court has seen fit to ignore all of the evidence justifying the payment of a salary of $7200 a year. It ignores the fact that it was the same salary authorized by the board of directors in 1954 and paid yearly thereafter. The evidence further indicates that during the year in issue Mrs. Randal's duties were increased because of the modernization of the building at that time. The Tax Court ignores the opinion of the expert Woodward, while at the same time finding distinctly that he was qualified by reason of experience and familiarity to give an opinion regarding the reasonableness of the compensation paid to Mrs. Randal. This was substantial evidence, uncontradicted by anything the Commissioner offered, and it was error to overlook it. In support of its opinion, the Tax Court cites Millspaugh Bldg. Corp. v. Commissioner of Internal Revenue, 2 Cir., 1951, 192 F.2d 887. The court therein, however, very clearly stated at page 889:

"* * * The taxpayer failed to establish what would ordinarily be paid for like services in similar enterprises. It produced no evidence to overthrow the estimate of the Commissioner except that of the co-trustee who was not a disinterested appraiser as it was his duty to get

all he reasonably could for his *cestui que* trust."

This court and many other courts of appeals have very clearly held that the presumption of correctness which attaches to a Commissioner's finding of value disappears when substantial evidence to the contrary has been introduced. As Judge Van Oosterhout said for this court in Cullers v. Commissioner, 8 Cir., 1956, 237 F.2d 611, 614:

"* * * The presumption of correctness is a rebuttable presumption and will support a finding in favor of the Commissioner only in the absence of any substantial evidence to the contrary. When the presumption has been overcome by evidence the presumption vanishes. Wiget v. Becker, 8 Cir., 84 F.2d 706; A & A Tool & Supply Co. v. Commissioner, 10 Cir., 182 F.2d 300; Mertens Law of Federal Income Taxation, Vol. 9, § 50.71."

And in Baltimore Dairy Lunch, Inc. v. United States, 8 Cir., 1956, 231 F.2d 870, 875:

"* * * The taxpayer has by its evidence met the burden of overcoming the presumption of correctness of the Commissioner's finding. The Government has introduced no substantial evidence to show that the salary deduction claimed by taxpayer is unreasonable. Under such circumstances the decision of the trial court is clearly erroneous. * * In the Mayson Mfg. Co. [Mayson Mfg. Co. v. C. I. R., 6 Cir., 178 F.2d 115] case the court quotes with approval from Taylor & Co. v. Glenn, D.C.W.D.Ky., 62 F.Supp. 495, 499, the following language, 178 F.2d at page 121:

'* * * *"If the compensation received * * * was unreasonable for the services rendered, certainly the government could have produced some experienced witness * * * who would have said so. The lack of such evidence operates very strongly against the defendant's contention."' "* (Emphasis supplied.)

In Lawrence v. Commissioner of Internal Revenue, 9 Cir., 1944, 143 F.2d 456, the court of appeals for the Ninth Circuit, in discussing the presumption of correctness of the Commissioner's determination, said at page 459:

"* * * That presumption disappears when, as here, evidence is introduced which would be sufficient to sustain a contrary finding. Wiget v. Becker, 8 Cir., 84 F.2d 706, 707, 708; Cooperative Publishing Co. v. Commissioner of Internal Revenue, 9 Cir., 115 F.2d 1017, 1021, 1022; cf. New York Life Insurance Co. v. Gamer, 303 U.S. 161, 171, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218. *If it appeared that the Tax Court had relied upon the presumption to sustain its finding it would be necessary for us to reverse the case.*" (Emphasis supplied.)

However, the court found:

"* * * the Tax Court *expressly enumerated* the factors which led it to conclude that the dividends were not constructively received by the shareholders." (Emphasis supplied.)

Therefore it upheld the Tax Court's determination.

In Crude Oil Corp. of America v. Commissioner, 10 Cir., 1947, 161 F.2d 809, 810, the court stated:

"* * * The presumption of the correctness of the Commissioner's finding is one of law. It is not an inference of fact. It disappears when evidence, sufficient to sustain a contrary finding, has been introduced."

This court said, in Arc Realty Co. v. Commissioner, 8 Cir., 1961, 295 F.2d 98, 101:

"* * * Such a presumption may be rebutted and will support a finding in favor of the Commissioner only in the absence of substantial evidence to the contrary."

The late Chief Judge Gardner, speaking for this court in Wiget v. Becker, 8 Cir., 1936, 84 F.2d 706, said at page 708:

"The presumption of correctness is in the class of the 'burden of proof presumption.' Morrison v. People of California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664; Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632. The party against whom it is invoked must fail if he does not produce evidence against it. It is often referred to in the books as the true presumption. 'A true presumption is not evidence, though it supplies its place and requires the other party to proceed with the negative. Unless he does, he loses; when he does, the presumption is out of the case, and the issue is open.' United States ex rel. [Scharlon] v. Pulver (C.C.A.2) 54 F.(2d) 261, 263. See, also, United States v. Le Duc (C.C.A.8) 48 F.(2d) 789; Fidelity & Cas. Co. [of New York] v. Niemann (C.C.A.8) 47 F.(2d) 1056; Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 193, 80 L.Ed. 229."

E. Albrecht & Son v. Landy, 8 Cir., 1940, 114 F.2d 202, 206:

"* * * But the presumption in favor of the propriety of the Commissioner's action takes flight upon the entry of proven facts. Wiget v. Becker, 8 Cir., 84 F.2d 706."

See, also, A & A Tool & Supply Co. v. Commissioner, 10 Cir., 1950, 182 F.2d 300, 302; Gordy Tire Co. v. United States, 1961, 296 F.2d 476, 155 Ct.Cl. 759.

In the instant case, the Tax Court's determination had to be based on the presumption of correctness of the Commissioner's determination. As has been shown supra, the taxpayer produced substantial evidence supporting the salary voted and paid to Mrs. Randal as being reasonable. There is no suggestion in the record backed by any testimony to the effect that the salary paid Mrs. Randal was a substitute for dividends or an attempt to distribute profits. The action by the board of directors carried a presumption of the reasonableness of the compensation paid. The situation presented in the present case is quite similar to that in the case of Indiatlantic, Inc. v. Commissioner, 6 Cir., 1954, 216 F.2d 203. The taxpayer in that case paid its president $50,000 for legal, presidential and managerial services; the Tax Court allowed only a $32,500 income tax deduction. The undisputed evidence in that case showed that Emmons, the recipient, had served the corporation for thirteen years; that he hadn't received any regular compensation for his services because of the fact that he assumed control of an insolvent corporation. The evidence further showed that Emmons brought the corporation to a solvent position. The court said at page 205:

"* * * The resolution of the board of directors granting him compensation of $50,000 in addition to the $15,000 paid in previous years creates the presumption that the allowance was reasonable and proper. Ox Fibre Brush Co. v. Blair, 4 Cir., 32 F.2d 42, 68 A.L.R. 696; Toledo Grain & Milling Co. v. Commissioner, 6 Cir., 62 F.2d 171; Mayson Manufacturing Co. v. Commissioner, 6 Cir., 178 F.2d 115. This rule, of course, is based upon the fact that the management of a business is presumably familiar with the amount and value of services rendered. * *

"The Tax Court produced no evidence to the effect that the compensation was unreasonable.

"This court has repeatedly held that the Tax Court is not authorized to disregard uncontradicted testimony concerning the worth and the reasonableness of services rendered * * *." (Citations omitted.)

See, also, Ox Fibre Brush Co. v. Blair, 4 Cir., 1929, 32 F.2d 42, 45, affirmed 1930, 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733.

We hold here that the substantial testimony offered by the taxpayer clearly

overcame the presumption of correctness attached to the Commissioner's determination. No evidence was offered by the Commissioner to counteract or rebut. Accordingly this case is reversed.