**William G. NORDVIK; Claire N. Nordvik, Petitioners– Appellants,**

v.

**COMMISSIONER INTERNAL REVENUE SERVICE, Respondent–Appellee.**

No. 93–70434.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1994.

Decided Oct. 20, 1995.

John P. McDonnell, Myers, Morley, Myers & McDonnell, Los Altos, California, for petitioners-appellants.

Curtis C. Pett, Tax Division, United States Department of Justice, Washington, D.C., for respondent-appellee.

Before: REINHARDT, RYMER, and HAWKINS,* Circuit Judges.

Opinion by Judge HAWKINS; Dissent by Judge REINHARDT.

MICHAEL DALY HAWKINS, Circuit Judge:

We consider here the circumstances under which private parties may recover post-settlement litigation costs incurred in the tax court. Taxpayers Claire and William Nordvik ("the Nordviks") appeal the denial of their motion for such costs, which the tax court based on its finding that the Nordviks had unreasonably protracted the litigation and its conclusion that the government's position was substantially justified. We have jurisdiction under 26 U.S.C. § 7430 and we affirm.

## I. Background

In early 1982 and again in 1984–85, the Nordviks invested in certain energy-producing wind turbines. In October 1989, the Internal Revenue Service ("IRS") mailed the Nordviks a Notice of Deficiency for the years 1983 through 1986, assessed for the total amount that the Nordviks claimed as tax credits for investments in the turbines and as deductions for business expenses incurred with respect to the turbines, including interest, taxes and depreciation. The deficiencies totaled $127,136 and the additions to tax assessed for negligence and valuation overstatement totaled another $44,497. The Nordviks filed a petition for redetermination and the case was set for trial.

Prior to trial, the parties agreed to settle the case. The IRS decided to allow the Nordviks a tax basis (i.e. a value for tax purposes) equal to the amount the Nordviks

---

* Judge Hawkins was drawn to replace Judge Tang. He has read the briefs, reviewed the record and listened to the tape of oral argument held on December 14, 1994.

actually paid "out of pocket" for each turbine. The Nordviks agreed to (and did) provide the IRS with documentation substantiating the amounts actually paid. The IRS agreed not to assess penalties for any deficiencies.

When the IRS contacted the Nordviks regarding the revised calculations, it proposed a $21,004 deficiency for 1984, no deficiencies for 1983, 1985 and 1986, and no penalties. The Nordviks agreed to stipulate that they owed this amount, even though they had not reviewed how the IRS had computed the proposed deficiency.[1] Pursuant to a formal, written stipulation, the tax court entered an order and decision on April 10, 1991 establishing the result agreed to by the parties.

After the tax court entered an order based on the parties' agreement, the IRS sent its computations to the Nordviks. When the Nordviks finally did review the figures, they concluded that the calculations contained several errors and sent the IRS a set of revised calculations along with an explanation of the errors they believed that the IRS had made. The Nordviks requested that the IRS explain these perceived errors.

The Nordviks thereafter sought and obtained permission to file an untimely motion to vacate or revise the April 10, 1991 decision and asked that it be revised after the parties agreed on the correct calculations.

The Nordviks and the IRS then attempted to come to an agreement on the Nordviks' tax liability. Although the parties resolved some issues, they still could not agree on the Nordviks' liability, so the Nordviks filed a motion to vacate or revise to which the IRS responded. These documents indicate that the Nordviks and the IRS disputed several calculations. The Nordviks thereafter filed a status report stating that no progress had been made in resolving the key issues. The tax court informed the parties that if they could not settle the matter by March 27, 1992, the court would rule on the motion to vacate or revise.

Following this, the Nordviks set forth their analysis of the disputed calculations and proposed a settlement agreement providing for no deficiencies and an adjustment on a credit

owed to the Nordviks in a separate matter, the latter to avoid having to make precise calculations on minor issues. The IRS accepted this settlement offer and on May 12, 1992, the tax court entered a decision and order pursuant to this agreement.

The Nordviks filed a contemporaneous motion requesting that they be awarded litigation costs from the point at which they initially agreed to settle the case (March, 1991) through the tax court's approval of the second settlement (May 12, 1992). The tax court denied the motion for litigation costs in a memorandum decision filed December 29, 1992 and a formal order of denial entered on January 19, 1993. The Nordviks filed a motion for reconsideration on February 1, 1993, which the tax court denied on April 23, 1993. The Nordviks filed the present appeal on May 6, 1993.

## II. Tax Court Jurisdiction

■ We first consider whether the tax court lacked jurisdiction to hear the motion to vacate or revise the original decision. The Commissioner claims that the tax court's original decision, entered on April 10, 1991, became final after ninety days, on July 9, 1991, and that the court lacked jurisdiction over any proceedings thereafter. The Nordvik motion sought litigation costs largely incurred during this period. If a tax court lacks jurisdiction over a dispute, it generally cannot award costs stemming from the dispute. *Latch v. United States,* 842 F.2d 1031, 1033 (9th Cir.1988).

■ Jurisdiction of the tax court is a question of law which we review *de novo. Billingsley v. C.I.R.,* 868 F.2d 1081, 1084 (9th Cir.1989). A decision of the tax court becomes final upon expiration of the time allowed for filing a notice of appeal, if no notice is filed. 26 U.S.C. § 7481(a)(1). Notice of appeal must be filed within ninety days. 26 U.S.C. § 7483. Once the decision becomes final, a tax court generally lacks jurisdiction to consider a motion to vacate or revise. *Billingsley,* 868 F.2d at 1084; *Abatti v. C.I.R.,* 859 F.2d 115, 117 (9th Cir.1988).

---

1. The Nordviks did not make their acceptance conditional upon their review of the IRS calculations. At argument, their counsel conceded that

any delay in reviewing these calculations was not the fault of the government, but his own busy schedule.

Whether the tax court retained jurisdiction over the Nordviks' case depends on the effect of the court's decision to grant leave to file an untimely motion to vacate or revise. The Nordviks filed a motion for leave to file an untimely motion to vacate or revise on July 3, 1991, prior to the July 9, 1991, finality date. On July 19, 1991, the tax court granted leave to file the motion. Nordviks filed the motion on October 7, 1991, and the tax court entered a modified decision on May 12, 1992.

The effect of a motion for leave to file an untimely motion to vacate was discussed in a district court decision, which we affirmed without opinion. *See Haley v. C.I.R.*, 805 F.Supp. 834 (E.D.Cal.1992), *aff'd. without opinion*, 5 F.3d 536 (1993), *cert. denied*, ——— U.S. ———, 114 S.Ct. 1538, 128 L.Ed.2d 191 (1994). In *Haley*, the tax court entered a judgment. Taxpayers filed a motion for leave to file a motion to vacate, along with the motion to vacate, some 87 days later. The tax court denied plaintiff's motion for leave to file a motion to vacate. *Haley* concludes that if a tax court denies an untimely motion for leave to file, then the motion does not extend the date upon which the tax court decision becomes final. *Id.* at 836. If a tax court grants the motion for leave to file and considers the merits of the motion to vacate, however, then the time for appeal is extended. *Id.*

The Second Circuit's analysis of tax court jurisdiction when the court grants a motion for leave to file, referenced in *Haley*, is consistent with the analysis of *Haley*. When a party files a motion requesting leave to file an untimely motion for review, along with the substantive motion, before the end of the ninety day period, the motions extend the time for appeal and therefore the date of finality. *Simon v. C.I.R.*, 176 F.2d 230, 232 (2nd Cir.1949). The Second Circuit rejected

the analysis of the First Circuit, which had concluded that the tax court retains jurisdiction to consider an untimely motion to vacate only if the court acts on the motion before the end of the ninety day period at which the original decision becomes final. *See Denholm and McKay Co. v. C.I.R.*, 132 F.2d 243, 248 (1st Cir.1942). The Second Circuit reasoned that the ability to seek review should not be dependent on the tax court's docket. *Simon*, 176 F.2d at 232.

■ By affirming *Haley* without opinion, we indicated our agreement with the decision. We now expressly adopt the portion of *Haley*, and the Second Circuit decision in *Simon*, applicable to the present case. If a tax court grants leave to file an untimely motion to vacate or revise before a decision becomes final, then the time for appeal runs from the decision on the motion to vacate or revise. The Nordviks filed a motion requesting leave to file an untimely motion to vacate or revise on July 3, 1991, prior to the July 9 ninety-day finality date. By granting the request and deciding the motion on its merits, the tax court extended the time for appeal and thereby the date on which the decision became final. Thus, the tax court retained jurisdiction over the subsequent proceedings.[2]

### III. Timeliness of Appeal

We also consider whether this court lacks jurisdiction because the Nordviks did not timely appeal. A notice of appeal of a tax court decision must be filed within ninety days after the decision of the tax court is entered. 26 U.S.C. § 7483, Fed.R.App.P. 13(a). The timeliness of the Nordviks' appeal depends on the effect of the motion for reconsideration. The tax court entered its

---

**2.** Nordviks claim that they filed both the motion requesting leave to file an untimely motion to vacate or revise, and the substantive motion, on July 3, 1991. However, the filing appears to be only an application for leave to file the substantive motion. In the July 3 application, they stated that revision would depend upon "further submissions by the Petitioners and the Government." Nordviks filed a "supplemental submission" on the motion to vacate or revise on October 7, 1991. This "supplement" is the substantive motion. *See Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir.1983) (to deter-

mine the type of motion involved, courts look at the substance, not the title).

It is irrelevant that the Nordviks filed only the motion requesting additional time within ninety days, whereas in both *Haley* and *Simon*, the taxpayers filed both the motion for additional time and the substantive motion within the ninety day period. Both *Haley* and *Simon* indicate that, if leave to file is requested within the ninety days and the tax court thereafter makes a decision on the merits, then the time for appeal is extended. The Nordviks satisfy this criteria.

decision denying Nordviks' motion for an award of litigation costs on January 19, 1993. Nordviks filed a motion for reconsideration on February 1, 1993. On April 23, 1993, the tax court denied the motion for reconsideration. On May 6, 1993, Nordviks filed their notice of appeal from the tax court's decision. The Nordviks' notice of appeal is timely only if the ninety day period began to run from the date the motion for reconsideration was denied.

We have previously stated that a timely motion for reconsideration pursuant to tax court rule 161 does not terminate the time for filing a notice of appeal. *Trohimovich v. C.I.R.*, 776 F.2d 873, 875 (9th Cir.1985). We relied on the language of Fed.R.App.P. 13(a),[3] which states that motions to vacate or revise a decision terminate the running of the time for appeal. *Id.* Rule 13(a) does not mention motions for reconsideration.

Our conclusion in *Trohimovich* is inconsistent with a subsequent Supreme Court decision. In *United States v. Ibarra*, 502 U.S. 1, 6–7, 112 S.Ct. 4, 6–7, 116 L.Ed.2d 1 (1991) (per curiam), the Supreme Court held that the period for filing an appeal in a criminal case began to run on the date the district court denied the Government's motion for reconsideration. The Court applied the " 'well-established rule in civil cases,' " that the period for filing an appeal begins with denial of a petition for rehearing, which is akin to a motion for reconsideration.[4] *Id.* at 4, 112 S.Ct. at 5 (quoting *United States v. Healy*, 376 U.S. 75, 78, 84 S.Ct. 553, 555, 11 L.Ed.2d 527 (1964)). This approach is not based on an express statute or rule, but rather on " 'tradition and virtually unques-

tioned practice.' " *United States v. Dieter*, 429 U.S. 6, 8 n. 3, 97 S.Ct. 18, 19 n. 3, 50 L.Ed.2d 8 (1976) (per curiam) (quoting *Healy*, 376 U.S. at 79, 84 S.Ct. at 556). Because *Trohimovich* is inconsistent with *Ibarra*, we apply *Ibarra*'s holding that, absent an express rule to the contrary, a motion for reconsideration terminates the running of the ninety day limitations period.[5]

The benefits of the general rule set forth in *Ibarra* are equally applicable to tax cases. If the time for appeal begins running after denial of a motion for reconsideration, then the tax court has an opportunity to correct its own alleged errors. This procedure reduces the burden placed on courts of appeal. *Ibarra*, 502 U.S. at 5–6, 112 S.Ct. at 6.

The advisory committee notes to Fed. R.App.P. 13(a) also support our conclusion that the time for appeal begins to run upon the date of decision on a timely motion for reconsideration. According to the notes, Rule 13(a) "states the settled teaching of the case law." In one of the cases cited in the advisory committee note, *Robert Louis Stevenson Apts., Inc. v. C.I.R.*, 337 F.2d 681, 683 (8th Cir.1964), the Eighth Circuit concluded that motions which challenge the substance of the tax court's decision terminate the running of the three month period for filing an appeal. 337 F.2d at 683. In its reasoning, the Eighth Circuit sets forth a general rule akin to the rule discussed in *Ibarra*: " '[W]here a petition for rehearing, a motion for a new trial, or a motion to vacate, amend or modify a judgment is seasonably made and entertained, the time for appeal does not begin to run until the disposition of the motion.' " *Id.* at 684 (quoting *Leishman v. As-*

---

**3.** Fed.R.App.P. 13(a) provides:

> The running of the time for appeal is terminated as to all parties by a timely motion to vacate or revise a decision made pursuant to the Rules of Practice of the Tax Court.

**4.** The *Ibarra* Court later repeated that "the consistent practice in civil and criminal cases alike has been to treat timely petitions for rehearing as rendering the original judgment nonfinal for purpose of appeal for as long as the petition is pending." *Id.* at 6, 112 S.Ct. at 6 (citing *United States v. Dieter*, 429 U.S. 6, 8, 97 S.Ct. 18, 19, 50 L.Ed.2d 8 (1976)).

**5.** We note that the decision in *Trohimovich* rested on two independent bases. In *Trohimovich*,

the taxpayers filed a motion to revise or vacate, which the tax court denied. The taxpayers then filed a motion for "review" of the decision. After the tax court denied this motion, the taxpayers filed a notice of appeal. 776 F.2d at 875. We concluded that the notice of appeal was untimely for two reasons. First, we concluded that the motion for "review" essentially sought reconsideration, and therefore did not toll the time for filing an appeal. *Id.* Alternatively, we concluded that, even if the motion were a motion to vacate or revise, it did not extend the filing deadline because successive motions asserting the same grounds cannot be tacked together to extend the time for filing an appeal. *Id.* The second, independent, basis for the decision stands unmodified.

*sociated Wholesale Electric Co.,* 318 U.S. 203, 204, 63 S.Ct. 543, 544, 87 L.Ed. 714 (1943)). Motions for reconsideration fit within this broad category. Thus the "settled teaching of the case law" referenced in the advisory committee notes supports the conclusion that motions for reconsideration terminate running of the time for appeal.

Nordviks' appeal was timely filed on May 6, 1993, a mere ten days after April 26, 1993, the date of the order denying the motion for reconsideration. Under *Ibarra,* the notice of appeal is timely.

## IV. Attorney's Fees

We next consider whether the tax court erred in denying the Nordviks' motion for attorney's fees. In an administrative proceeding or court proceeding involving determination of taxes, the "prevailing party" may be awarded a judgment for reasonable administrative costs and reasonable litigation costs, including attorney's fees. 26 U.S.C. § 7430(a)(1)–(2), (c)(1). However, fees will be denied for any portion of the court proceedings during which the prevailing party "unreasonably protracted" the proceedings. 26 U.S.C. § 7430(b)(4).

The tax court concluded that the Nordviks had unreasonably protracted the proceedings. The court reasoned that the Nordviks did not question the deficiencies in the first settlement until they received the IRS calculations, after the court order was entered. In addition, the tax court noted that the Nordviks did not file a motion for leave to file an untimely motion to vacate or revise until eighty-six days after the original order was entered, well past the thirty-day deadline for such motions. The tax court decision is reviewed for abuse of discretion. *Estate of Merchant v. C.I.R.,* 947 F.2d 1390, 1392 (9th Cir.1991).

The Nordviks stipulated to a settlement figure of a $21,004 deficiency without reviewing the IRS calculations. Although the Nordviks and the IRS had reached a general understanding, the only specific number that the Nordviks agreed on was this final deficiency figure. The Nordviks were unaware of how the IRS had arrived at this figure. They assumed that the IRS would allow various deductions and credits, but did not know whether the IRS had actually done so. Given the plethora of rules involved in calculating tax liability, it is not surprising that the Nordviks had several disagreements with the IRS once they did review the calculations. By this time, however, the tax court had long since entered judgment pursuant to the stipulation.

Because the Nordviks failed to review the calculations before settling, they ultimately spent several months quarreling with the IRS about the correct interpretation of the initial agreement. Had they agreed on a set of calculations initially, rather than a final figure, the later proceedings would have been unnecessary.[6]

■ The Nordviks compounded their problems by failing to review the IRS calculations promptly upon receipt on April 22, 1991. Had they done so, the Nordviks could have entered a timely motion to vacate or revise within 30 days of the tax court's April 10 decision. However, the Nordviks delayed their review until the ninety day finality period was almost at an end. They had to file an untimely motion for reconsideration. Considering both the Nordviks' failure to review IRS calculations before stipulating to a deficiency figure, and the failure to promptly review the IRS's calculations upon receipt after judgment, the district court's conclusion that the Nordviks unreasonably protracted the proceedings was not an abuse of discretion.[7]

## V. Due Process Claim

Finally, the Nordviks claim that the tax court violated the Due Process Clause by adopting the Commissioner's statement of facts without giving the Nordviks a hearing.

---

**6.** The fact that the settlement was provided to the tax court shortly before the trial date does not excuse the Nordviks' failure to review the IRS's calculations before stipulating to a final deficiency figure. The tax court likely would have given more time to the parties in the midst of settlement negotiations, as the tax court liberally granted the parties additional time later in the proceedings.

**7.** Because we conclude that the Nordviks unreasonably protracted the proceedings, we need not review the other basis for the tax court's decision—that the position of the IRS was substantially justified.

The Nordviks do not challenge the constitutionality of tax court rule 232(a)(3), which provides that a motion for attorney's fees "ordinarily will be disposed of without a hearing unless it is clear from the motion and the Commissioner's written response that there is a bona fide factual dispute that cannot be resolved without an evidentiary hearing."

In the Nordviks' case, the statement of facts contained within the tax court decision is largely a recitation of the dates and contents of the key filings and correspondence in the case. These facts are largely undisputed. The record before the tax court contained the parties' filings, including: the first stipulated agreement, the Nordviks' motion to vacate or revise, the second stipulated agreement, the Nordviks' motion for litigation costs, IRS's responses and objections, and the parties' status reports. The record also contained the supporting affidavits and exhibits attached to those filings, including key correspondence between the Nordviks and the IRS.

■ The disputed legal issues and the facts relevant to these disputes are discussed in detail, repeatedly, in this record. Therefore, even if the Commissioner made a disputed statement of fact, the Nordviks' filings fully set forth their version of what had happened. The Nordviks could not have provided much more information at an oral hearing. Indeed, they did not even request one. The tax court satisfied the requirements of the tax court rules and the Due Process Clause.

The decision of the tax court is AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I do not believe that the government's position was substantially justified; nor do I believe that the Nordviks unreasonably protracted the litigation. Accordingly, I respectfully dissent.

The Nordviks entered into a settlement agreement with the IRS on March 7, 1991, four days before their case was scheduled for trial. Both sides agreed that the Nordviks would be permitted to count their "out of pocket" costs as the basis for their investment in wind turbines. As part of the settlement agreement, the Nordviks agreed to pay a $21,004 deficiency for the 1984 tax year. That sum represented the amount of unpaid taxes that the IRS represented it had calculated by applying its "at risk" rules. When the IRS subsequently supplied the Nordviks with its figures, they discovered that it had misapplied its rules in calculating the deficiency. The Nordviks protested. More than one year later, the IRS belatedly acknowledged its mistake and agreed that they did not owe *any* money for the 1984 tax year.

The principal difference between the Nordviks and the IRS centered around the application of 26 U.S.C. § 48(q), which governs the calculation of the basis of an asset for purposes of depreciation. The key to resolving the controversy was a previously issued private letter ruling that § 48(q) does not apply to property placed in service before 1983. Since the wind turbine that the Nordviks depreciated on their 1984 tax return was put into operation in 1982, § 48(q) was clearly inapplicable—as the IRS eventually conceded. The IRS's attempt, in contravention of its own regulations, to apply § 48(q) to property put in service before 1983 was not substantially justified. In fact, it was not justified at all.

The Tax Court confuses the issue by noting that the Nordviks also offered other arguments in contesting the $21,004 deficiency. Whether or not the government had substantial justification for rejecting those other arguments, the IRS had no justification for refusing to acknowledge the validity of Nordviks' argument that § 48(q) could not apply to wind turbines put into operation in 1982. Since the government's position was not substantially justified, I turn to the issue of delay.[1]

The majority offers two separate arguments to support its conclusion that the Nordviks unreasonably protracted the litigation: 1) the Nordviks should not have agreed

<hr>

1. Taxpayers are not eligible to receive reimbursement for attorney's fees if they have unreasonably delayed the proceedings or if the government's position, although ultimately erroneous, was substantially justified. The Tax Court held

that the government's position was substantially justified and that the Nordviks unreasonably protracted the proceedings. The majority opinion holds that the Nordviks caused an unreasonable

to the $21,004 deficiency without first reviewing the IRS calculations, even though the case was about to go to trial and both sides were under pressure to resolve the case and avoid a trial; and 2) the Nordviks should have reviewed the IRS calculations more quickly once they received them. In my opinion, these arguments are without merit.

Stripped of its legal embellishments, the majority's first argument is simply that the Nordviks should not have trusted the IRS to do what it promised to do. While the facts of this case show that to be true, I do not believe that innocent taxpayers may or should be penalized for assuming that the IRS will not contravene its own written policies in calculating a deficiency pursuant to a settlement agreement. The majority states: "Because the Nordviks failed to review the calculations before settling, they ultimately spent several months quarreling with the IRS about the correct interpretation of the initial agreement." Majority Opinion at 1494. The majority blames the victim rather than the wrongdoer. What it should have said is: "Because the IRS violated its own policies, the Nordviks were forced to spend a year convincing it that it had erred, and laboring to correct the IRS' mistake." In this case, had the Nordviks done what the majority suggests and refused to take on faith the IRS' deficiency determination for purposes of the settlement agreement, no agreement could have been reached in time to avoid the pending trial. That is obvious from the length of time it ultimately took to resolve the matter once the Nordviks learned of the IRS' error.

In punishing the Nordviks for not challenging the IRS' calculations sooner, the majority opinion implicitly sets an unreasonable and unworkable standard for determining what constitutes an unreasonable delay. The majority does not and could not contend that the Nordviks filed frivolous motions or engaged in delaying tactics. Indeed, judged against the backdrop of typical litigation today, this case was not marked by unusual delays and certainly not by protracted ones. The majority's sole basis for concluding that the Nordviks unreasonably protracted the proceedings is its *ipse dixit* pronouncement that the Nordviks should have acted more expeditiously in challenging the IRS' flawed calculations.

Not surprisingly, the majority cites no case to support its conclusion.[2] Nor does the majority enunciate any general principles that it used, or that lower courts should use, in determining whether or not taxpayers have unreasonably protracted proceedings. In fact, the majority cites only one case in its entire discussion of the Nordviks' conduct and that case, *Estate of Merchant v. C.I.R.*, 947 F.2d 1390 (9th Cir.1992), is cited for the proposition that the IRS' positions are generally reviewed for an abuse of discretion. Thus, at the end of its opinion as at the beginning, we are left without any legal explanation of *why* the majority has concluded that the Nordviks engaged in unreasonable delay and thereby should be forced to forfeit their right to attorneys' fees.

As evidence of the Nordviks' responsibility for unreasonable delays, the majority notes that the Nordviks filed an untimely motion for reconsideration 86 days after the settlement became final. The majority, however, places undue and unjustified weight on the Nordviks' action in filing a motion for reconsideration after the 30–day period for filing such motions as of right had lapsed.[3] The

delay in the proceedings but does not reach the issue of whether or not the government's position was substantially justified. Since I find that the Nordviks did not unreasonably delay the proceedings, I also reach the issue of whether or not the government's position was substantially justified.

**2.** It was the Nordviks who brought the private letter ruling to the INS' attention. As a matter of law, they cannot be blamed for not bringing the IRS letter to the IRS' attention sooner, for the private letter ruling was in the IRS' possession at all times. *See Pohl Corporation v. United States,* 29 Fed.Cl. 66, 73 (Ct. of Fed.Cl.1993) (noting that plaintiff "did not unreasonably protract the proceedings by not specifically calling defendant's attention to papers already in its possession").

**3.** Once again, the majority acts on the basis of its assumptions rather than the law. The majority does not cite a single case that holds that the 30–day window is significant when determining whether or not a litigant unreasonably protracted proceedings. Nor does the majority cite a single case holding that an 86–day delay (or

tax court allowed the Nordviks to pursue their motion, thereby suggesting that the tax court itself concluded that Nordviks were not guilty of any serious or prejudicial delay. Moreover, an 86–day delay [4] is minimal in the context of this, and of most, litigation.

This case began in October of 1989 when the IRS sent the Nordviks a Notice of Deficiency. Eighteen months later, in March of 1991, the Nordviks and the IRS agreed to settle the case. After a written reminder from the Nordviks, the IRS provided the Nordviks with its computations on April 22, 1991. On July 3, 1991, slightly two months after *receiving* the IRS' written calculations, the Nordviks sought permission to file an untimely motion to vacate or revise the settlement agreement. By that point, the controversy had been going on for 21 months, and at most a delay of two months—measured from when the Nordviks received the written computation to when they challenged the erroneous computation—can fairly be attributed to the Nordviks.

The controversy was not finally resolved until May 12, 1992, ten months later. The final delay resulted from the IRS' intransigence in acknowledging its own mistake in calculating the Nordviks' deficiency, notwithstanding the Nordviks' best efforts to persuade the IRS of its error. Thus in all, the dispute dragged on 31 months, and at most two months can be fairly attributed to the Nordviks' failure to act more expeditiously.

Not only was the delay relatively minimal, but the IRS did not present any evidence that the government was harmed by the delay or that the delay caused the government to incur any additional expenses. Given the minimal nature of the delay and the lack of any suggestion that the delay prejudiced the government, I respectfully disagree with the majority's decision to uphold the tax court's finding that the Nordviks unreasonably delayed the proceedings. Since there is no evidence that the Nordviks caused protracted delays in the proceedings and since the government's position was not substantially justified, I conclude that the tax court abused its discretion in denying the Nord-

viks' motion for attorneys' fees. In fact, in my opinion, the tax court and the majority have this case backwards. If anyone should be sanctioned for needless and unreasonable delay, it is the IRS and not the innocent taxpayers. Accordingly, I would reverse.

---

more accurately a 56–day delay) is a prolonged one.

4. Really, it is only a 56–day delay since the Nordviks had 30 days according to the rules to file a motion for reconsideration.